**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DR. NICHOLAS ANGELOPOULOS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-cv-05836 |
| | ) | |
| v. | ) | |
| | ) | Hon. Robert M. Dow, Jr. |
| KEYSTONE ORTHOPEDIC SPECIALISTS, | ) | |
| S.C., WACHN, LLC, MARTIN R. HALL, | ) | Magistrate Judge Daniel G. |
| M.D., IRA K. DUBIN LTD. d/b/a GREEN | ) | Martin |
| DUBIN & CO., and IRA K. DUBIN, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION TO HOLD MARTIN R. HALL IN CONTEMPT OF COURT**

Plaintiff Dr. Nicholas Angelopoulos ("Dr. Angelopoulos") respectfully moves this Court, pursuant to Rule 37(b), Rule 45(g), LR 37.1, and this Court's inherent powers, to hold Martin R. Hall ("Hall"), a Defendant and the Rule 30(b)(6) witness designated to testify on behalf of third-parties MedStaff Supply, Inc. ("MedStaff") and Vertical Plus MRI of America LLC ("Vertical Plus") in contempt of court, for the reasons set forth below:

1.  This motion is to provide newly discovered information to the Court concerning the February 11, 2014 motion to compel hearing, to seek sanctions for false representations that Martin Hall caused to be made to the Court in connection with that hearing, and to request an appropriate sanction.

2.  As this Court is aware, Plaintiff has sought to take the Rule 30(b)(6) depositions of two non-party companies that Defendant Hall owns and controls, Vertical Plus and MedStaff. Hall purported to be the only possible witness who could testify for the companies. The

1

depositions were scheduled for February 11, 2014, a date specifically requested by Hall and agreed to by all counsel in an attempt to accommodate Hall's medical practice.[1]

3. A few days before the depositions were to occur, Hall's counsel unilaterally cancelled the depositions.

4. Plaintiff filed an Emergency Motion to Compel the depositions.

5. The Hall Defendants responded that "Dr. Hall is unavailable that day because he has to perform surgery from 5:30 a.m. until 2:00 p.m. and then teach at Loyola Medical School until 9:00 p.m." (Docket No. 91, pages 5.)

6. This Court heard the Emergency Motion to Compel on February 11, 2014 at 10:00 a.m., the day of the scheduled depositions. Hall's counsel informed the Court that "Dr. Hall had a conflict today, which is why he ended up canceling." (Transcript of Hearing of Feb. 11, 2014; page 5; attached as Exhibit 1.)

7. At approximately 10:15 a.m., this Court instructed counsel for Hall to contact Hall by telephone in order to obtain and immediately provide dates for the depositions and to knock on the Court's door when Hall's counsel obtained those dates. The Court explained "Dr. Hall doesn't run the whole show here. So Dr. Hall needs to maybe cancel a surgery or reset a surgery so he can be available to these folks for depositions." *Id*. at 6-7.

8. Counsel left the courtroom, and returned several minutes later and the Court recalled the case.

9. Hall's counsel said the following to the Court: "Your Honor, I tried to reach Dr. Hall. He's in surgery in Hines Hospital all morning. His office doesn't control his calendar. He does. I tried to find out if anybody else there could review it. They said we have to talk to Dr.

---

[1] Based on the Court's order of February 11, those two depositions have now been re-set for a full day March 11, and an additional day as required.

Hall. We will try to get him. The best I can suggest, Your Honor, is we will get him, find him this afternoon and get dates from him and communicate that to the other side. But he's in surgery this morning scheduled in Hines Hospital." *Id*. at 7-8.

10. At the exact time that he represented (through his lawyers) that he was in surgery, he was *not* in surgery, but was at the office of Dr. Mark Chang, another former Keystone physician, engaging in behavior that was, at a bare minimum, inappropriate and possibly illegal. The photographic and testimonial proof on this point is incontrovertible.

11. At 10:00 am on February 11, 2014, Hall showed up unannounced at the office of Dr. Mark Chang at 1100 Joliet Street in Dyer, Indiana. Dr. Mark Chang was one of Dr. Angelopoulos's partners at Keystone. (*See* Declaration of Dr. Mark Chang, attached hereto as Exhibit 2, ¶ 3).

12. According to Dr. Chang's sworn statement, Dr. Chang was busy with patients. (Chang Decl. ¶ 3.) However, Hall advised Dr. Chang's assistant that Hall would wait until Dr. Chang would meet with him. (Chang Decl. ¶ 4.) After Hall had waited for about 15 minutes, Chang spoke with him. (Chang Decl. ¶ 5.)

13. Hall talked with Dr. Chang for five to ten minutes. (Chang Decl. ¶ 6.) As Dr. Chang states: "The purpose of his visit was not clinical or related to patient care. It was to ask me to dissuade Nick Angelopoulos from continuing with his lawsuit against him, otherwise he will be forced to file lawsuits against me and Daniel Weber to recover some unspecified monies. I told Hall that I have no influence on Dr. Angelopoulos' case, that I know of no money that I would owe him, and questioned how bring [sic] a suit against me would aid him in his case against Dr. Angelopoulos. He provided no satisfactory answers, but he did state that of all the

3

doctors that had left Keystone, that I was the only one he regretted leaving. We ended our meeting with brief updates of our daughters." (Chang Decl. ¶7.)

14. Hall did not appear anxious to leave Chang's office on February 11, nor did he say anything about going to surgery. *Id.* at ¶ 8. Hall left Dr. Chang's offices on February 11 at about 10:30 a.m. *Id.* at ¶ 9.

15. Dr. Chang's testimony about Hall's presence at his office is fully corroborated by three photographs attached as Exhibit 3. Those photos were taken by security cameras in and outside the building that houses Dr. Chang's office, and that plaintiff obtained by subpoena.

16. The first photo depicts Dr. Hall, the individual in the blue or black jacket with red and white stripes on the sleeves, walking along the sidewalk toward the entrance at Dr. Chang's building at 1100 Joliet Street building. The time and date stamp on the building security cameras reflect that Hall was at that location at 10:01:36 on February 11, 2014. (See Exhibit 3-1 and Chang Decl. ¶ 10.) The second photo shows Hall in the building vestibule at 10:01:59 the same morning. (Exhibit 3-2 and Chang Decl. ¶10.) The third photo shows Hall conversing with two unidentified persons as he left the building at 10:26:12 a.m. (Exhibit 3-3 and Chang Decl. ¶10.)[2]

17. Dr. Chang's testimony is also corroborated by evidence (related to Dr. Angelopoulos by Dr. Weber) that Hall has made the same threats to Dr. Daniel Weber, another former Keystone partner, that he made on February 11 to Dr. Chang. Specifically, Dr. Angelopoulos has learned that Hall also recently went to Dr. Weber's home and likewise attempted to coerce Dr. Weber into assisting him in making this lawsuit go away by threatening a lawsuit against Dr. Weber.

---

[2] Plaintiff's counsel provided these photographs to Hall's counsel on February 26, 2014 and advised them of their inconsistency with the representations made to this Court on February 11, 2014, but received no response.

4

18. We are mindful of the Court's directive in its Order of February 28, 2014, not to engage in *ad hominem* attacks on our opponent, and this is not one. Hall's actions in causing his lawyer to cancel two duly subpoenaed third-party depositions and then to misrepresent his availability and whereabouts to the Court both in written submissions and in person on February 11 is a serious matter – no matter what term one chooses to apply to it. Perhaps even more serious is threatening a lawsuit against a third party in order to obtain that party's assistance in trying to cause Dr. Angelopoulos to drop his lawsuit.

19. Finally, despite the fact that more than two weeks have elapsed since the February 11 hearing, and despite numerous requests from Plaintiff's counsel, Hall has still not provided dates for the other depositions to which the plaintiff is entitled: the Rule 30(b)(6) depositions of the corporations Martin Hall, M.D., S.C., Keystone Orthopedics, and WACHN LLC, and the deposition of Hall personally. Given the scheduling history here, those dates should be provided forthwith. Otherwise, we anticipate great difficulty in obtaining the necessary depositions before the fact discovery cut-off of July 18, 2014.

## **Argument**

Courts have "inherent authority to sanction litigants for conduct that abuses the judicial process," including imposing contempt sanctions. *F.T.C. v. Asia Pacific Telecom, Inc.*, 788 F.Supp.2d 779, 789 (N.D. Ill. 2011). A civil contempt finding is appropriate when the following are shown by clear and convincing evidence: 1) a court order sets forth an unambiguous command, 2) the alleged contemnor violated that command, 3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order, and 4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *Id.* Civil contempt sanctions are "remedial, and for the benefit of the complainant." *Id.* A court has broad

5

discretion to impose sanctions for civil contempt "in order to coerce compliance or to compensate the complainant for losses sustained as a result of the contumacious conduct," including compensating the movant for staff and attorneys' fees. *South Suburban Housing Center v. Barry*, 186 F.3d 851, 854 (7th Cir. 1999); *see also* R. Civ. P. 37(b) and LR 37.1.

That the first three requirements for a civil contempt finding are met here cannot be disputed. Plaintiff issued a subpoena, through his attorneys, to MedStaff and Vertical Plus, which was continued to February 11, 2014. A subpoena issued by an attorney as an officer of the court is itself a court order. *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010). Hall was the designated witness for both. He knowingly and intentionally failed to appear for the deposition, and, thus, significantly violated the order as he did not in any way comply with it. With regard to the fourth requirement, Hall previously represented to Plaintiff and to this Court repeatedly that he could not be present because he was in surgery all day on February 11, 2014. And when this Court asked Hall's counsel to contact Hall during the February 11 hearing on Plaintiff's motion to compel, counsel stated that counsel "tried to reach Dr. Hall… [b]ut he's in surgery this morning scheduled in Hines Hospital." (*See* Transcript p. 8). This was a false statement to this Court and succeeded in putting off two key depositions for another 30 days.

### Relief requested

Plaintiff respectfully requests that the Court enter an Order:

a. holding Hall in contempt of court;

b. ordering Hall within one week to supply dates between May 1 and June 15 for the deposition of Hall personally and the three depositions of the companies he controls which have not yet been scheduled: Keystone, WACHN and Hall M.D., S.C.

6

  c. ordering that those depositions will take place at the offices of the plaintiff's lawyers (inasmuch as Hall has previously suggested he should be deposed in his own office in Hazel Crest);

  d. ordering that once scheduled, depositions may not be cancelled by Hall except by timely filing a properly supported motion for a protective order under Rule 26;

  e. ordering Hall to pay the costs and expenses sustained as a result of Hall's misconduct. Pursuant to Local Rule 37.1, Plaintiff hereby sets forth the costs and expenses incurred in connection with these motions:[3]

    1. $3,000 in connection with this motion. The actual amount incurred was $5,190.

    2. $3,000 in connection with Plaintiff's motion to compel depositions. The actual amount incurred $4,575. (*See* Exhibit 4).

Dated: February 28, 2014        Respectfully submitted,

                       */s/ Chris Gair*
                       Chris Gair

Chris Gair (ARDC # 6190781)
Vilia M. Dedinas (ARDC # 6191614)
Thomas R. Heisler (ARDC # 6296712)
Gair Law Group, Ltd.
1 E. Wacker Drive, Suite 2050
Chicago, IL 60601
(312) 600-4900

---

[3] In awarding attorneys' fees under Rule 37, a verified summary of those invoices and requests is sufficient. *J.D. Marshall Intern., Inc. v. Redstart, Inc.*, *2 (N.D. Ill. Aug. 12, 1987).

**CERTIFICATE OF SERVICE**

  I, Chris Gair, the undersigned attorney, hereby certify that on February 28, 2014, I provided service of **Plaintiff's Motion to Hold Dr. Martin R. Hall in Contempt of Court** by ECF service to counsel of record appearing on behalf of all parties.

              */s/ Chris Gair*
              Chris Gair