# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS ANGELOPOULOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-05836 |
| | ) | |
| KEYSTONE ORTHOPEDIC SPECIALISTS, S.C., | ) | Judge Robert M. Dow, Jr. |
| WACHN, LCC, MARTIN R. HALL, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, an anesthesiologist, alleges that Defendant Dr. Martin Hall defrauded him in connection with two medical businesses, both of which are Defendants in this action: Keystone Orthopedic Specialists, S.C., and WACHN, LLC, a lessor of medical suites. In addition to alleging common law fraud (Count II), Plaintiff alleges the fraudulent filing of an information return in violation of 26 U.S.C. § 7434 (Count I), breach of fiduciary duty (Count III), breach of contract (Counts V and VI), and unjust enrichment (Count VII). He also brings an action under 805 ILCS § 180/35-65 to determine the fair value of his distributional interest in Defendant WACHN, LLC (Count IV). Before the Court is Defendants' motion to dismiss Counts I, II, VI and VII [233]. For the reasons stated below, the Court denies Defendants' motion.

## I. Background[1]

### A. Keystone

In early 2004, Plaintiff joined Keystone, an orthopedic medical practice including four

---

[1] For the purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

physician-shareholders: Plaintiff, Hall, Dr. Daniel Weber, and Dr. Martin Chang. Plaintiff alleges that his oral agreement with Keystone paralleled that of every other physician-shareholder. Under these agreements, each physician would pay 25 percent of Keystone's expenses. Each physician would receive revenues generated by his individual patient billings, 25 percent of certain other revenues, and a guaranteed fixed monthly draw of $25,000. If a physician left Keystone, it would pay the full amount of his contribution toward cash reserves, revenues generated by his patient care, the value of funds invested in any equipment, and any other funds that Keystone owed him.

As secretary and president of Keystone, Hall allegedly engaged in self-dealing and misappropriated corporate funds for his personal benefit. For example, he allegedly caused Keystone to hire MedStaff—a Hall-affiliated business that provided medical staffing and health insurance—at premium rates. He also caused Keystone to rent its MRI machine from Vertical Plus, which Hall owned and managed with his brother-in-law, also at a premium rate. Hall allegedly accepted these arrangements on Keystone's behalf without soliciting bids from competitors, without obtaining the other physicians' approval, and without disclosing the conflicts or the full terms of the agreements. According to Plaintiff, Hall also hid invoices and other billing-related documentation from the other physicians. Hall additionally charged Keystone for expenses incurred by his personal corporation—Martin R. Hall M.D., S.C.—including the salaries and benefits of his wife and brother-in-law. In addition, Hall gave himself and select employees retirement benefits without offering those same benefits to other physicians and staff. In early 2006, Hall requested and received $100,000 from the three other physicians, falsely representing that a "cash reserve" was necessary to avoid certain unidentified bank fees. He also failed to pay Plaintiff for any of Keystone's 2004 revenues, aside from Plaintiff's own

billings, and withheld $150,000 of Plaintiff's guaranteed draw that year. To hide this conduct and underreport income due to Plaintiff, Hall allegedly produced fraudulent profit and loss ("P&L") statements at the end of every quarter from 2004 to 2007. He allegedly hid documentation of Keystone's actual expenses and altered Keystone's accounting records ("QuickBooks files") to comport with the fraudulent P&L statements.

In 2007, Chang, Weber and then Plaintiff dissociated from Keystone. In order to reduce the amount due to each physician upon his departure, Hall retroactively changed the agreed-upon allocation of income, resulting in a loss to Plaintiff and a significant profit to Hall. Upon, Plaintiff's departure, Keystone also failed to give him the value of his interest in Keystone; his $100,000 contribution toward Keystone's "cash reserves"; his investment in Keystone's equipment; income accrued through the date of his departure; or accounts receivable from his billings.

### B. WACHN

Around the time that these physicians formed Keystone, they also formed WACHN, LLC along with Dr. Phillip Narcissi. The name WACHN derives from the first letter of the last names of each member: Weber, Angelopoulos, Chang, Hall and Narcissi. The five physicians formed WACHN with the purpose of purchasing and leasing medical suites—one to Keystone and the remainder to other tenants. Hall allegedly engaged in similar self-dealing in the context of WACHN. He also forged Plaintiff's signature and fabricated an operating agreement so WACHN could borrow money to purchase property. Each partner made contributions toward the down payment and personally guaranteed the entire loan. Despite accepting these equity contributions from each physician and orally agreeing to make them equal shareholders, Hall allegedly filed papers with the Illinois Secretary of State falsely stating that he and his brother-

3

in-law were the only owners. Around October 2007, Plaintiff withdrew from WACHN. Hall and Narcissi allegedly amended the forged operating agreement to cause Plaintiff to forfeit his interest in the business. WACHN then declined to purchase Plaintiff's interest in the business.

### C. Fraudulent IRS 1099-MISC

According to Plaintiff, in order to reduce the two businesses' financial obligations to Plaintiff upon dissociation, Hall allegedly fabricated a false set-off. More specifically, he falsely claimed that Plaintiff owed both businesses money and that these debts offset the businesses' financial obligations toward him. See [222], TAC at ¶¶ 105-107 (detailing examples of false debts). Around late 2007 or early 2008, Hall allegedly attempted to pressure Plaintiff into agreeing that the two businesses owed him nothing based on these fabricated set-offs, but Plaintiff rejected the proposal.

Plaintiff alleges that in retaliation, Hall reported false information to the IRS to increase Plaintiff's tax liability. More specifically, he falsely reported in a 1099-MISC form (submitted on Keystone's behalf) that Plaintiff earned $159,577.45 in miscellaneous income in 2007 although he had earned only $38,010.45.[2] Hall allegedly inflated Plaintiff's income by overstating his revenues, understating his expenses, and fabricating a variety of forgiven loans. On June 7, 2011, the IRS issued a Notice of Deficiency to Plaintiff, alleging that he had failed to pay taxes on the $159,577.45 in miscellaneous income. Plaintiff filed a petition in the U.S. Tax Court, alleging that the miscellaneous income was inflated, and the IRS allegedly agreed.

---

[2] A 1099–MISC is an information return generally reporting a non-employee's receipt of miscellaneous income worth $600 or more. Examples include payments of rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable gains, profits, and income—worth $600.00 or more to non-employees. See 26 U.S.C. § 6041(a).

Plaintiff sues to recover accounting and legal fees as well as lost wages due to Hall's alleged misrepresentations in the 1099-MISC.

### D. This Action

Plaintiff filed this action on July 24, 2012. Relevant here, Count I alleges that Keystone and Hall fraudulently filed an information return in violation of 26 U.S.C. § 7434. Count II alleges common law fraud against all Defendants. Count VI alleges that Keystone breached its oral agreement with Plaintiff by failing to compensate him or purchase his interest upon dissociation. And Count VII brings an unjust enrichment claim against Keystone, WAHN, and Hall. Plaintiff initially brought this action against not only the current Defendants but also Keystone's accountants, Ira K. Dubin, Ltd. and Ira K. Dubin. On September 8, 2014, Plaintiff and the Dubin Defendants filed a stipulation of dismissal [190]. The remaining Defendants move to dismiss Counts I, II, VI and VII.

## II. Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As previously noted, reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise

the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

## III. Analysis

### A. Count I

Defendants move to dismiss Count I—which alleges that Keystone and Hall fraudulently filed a 1099-MISC in violation of 26 U.S.C. § 7434—against Hall. Section 7434 provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). Defendants submit that "any person * * * so filing" means a person required to file the return. According to Defendants, the "person" required to file the 1099-MISC here was Keystone, not Hall. They argue that Hall, who was merely involved in preparing the return, is an improper Defendant.[3]

---

[3] Plaintiff unpersuasively asks the Court to disregard this argument as untimely because it was absent in Defendants' answer to the SAC. By filing an amended complaint, a plaintiff "wipes away prior pleadings," including previous answers. *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (citation and internal quotation marks omitted). The absence of certain arguments in Defendants' answer

6

Defendants cite *Vandenheede v. Vecchio*, 2013 U.S. Dist. LEXIS 25845 (E.D. Mich. 2013), in support of their proposed statutory interpretation. In *Vandenheede*, the plaintiff alleged that the co-trustees of a trust and an accounting firm filed a fraudulent 1099-MISC under § 7434 on the trust's behalf. The question before the court was whether "any person" included the co-trustees and accounting firm who prepared the return and caused it to be filed. *Vandenheede* interpreted "any person" to mean a person required to file a return, not a preparer. *Id.* at *3. Notably, however, *Vandenheede*'s interpretation of § 7434 relied on a regulation interpreting a different statute, 26 U.S.C. § 6721. See U.S. Treasury Reg. 26 C.F.R. § 301.6721–1(g)(6) (interpreting 26 U.S.C. § 6721). Section 6721 penalizes "any person" who files a late return, a return lacking the required information, or a return including inaccurate information. 26 U.S.C. § 6721(a). The regulation identifies the relevant filer as "a person that is *required* to file an information return." 26 C.F.R. § 301.6721-1 (emphasis added). In the absence of a regulation interpreting § 7434, *Vandenheede* adopted the regulation's definition of the relevant filer for two reasons. First, both statutes used similar language penalizing conduct committed by "any person," and, second, both statutes addressed the filing of inaccurate 1099–MISCs.

The Court respectfully disagrees with *Vandenheede*'s interpretation. In construing this statute, the Court "begins where all such inquiries must begin: with the language of the statute

---

to the SAC therefore does not result in waiver or untimeliness. *Id.* Plaintiff similarly argues that Defendants' argument is untimely because it was absent in their motion to dismiss the same count in the FAC. Although it would have been more efficient for Defendants to have raised this argument previously, Rule 12 does not require Defendants to "consolidate all failure-to-state-a-claim arguments in a single dismissal motion." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) (holding that Fed. R. Civ. P. 12(g)(2)'s consolidation requirement does not apply to arguments for failure to state a claim and explaining that Rule 12(h)(2) permits a party to raise a 12(b)(6) claim as late as trial). Lastly, Defendants suggest that the Court may wish to construe their motion under Federal Rule of Civil Procedure 12(c). A Rule 12(c) motion is only appropriate "[a]fter the pleadings are closed." Fed. R. Civ. P. 12. Defendants have yet to answer all counts. See [232], Answer to TAC. Accordingly, the pleadings are not closed, and the Court construes this motion as a motion to dismiss.

itself. In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (citations and internal quotation marks omitted). The plain meaning of "any person" is *any* person; "any person" includes not only an entity *required* to file a return but also a manager like Hall, who allegedly reported the false information in the return and caused it to be filed. The district court in *Pitcher v. Waldman*, 2014 WL 1302551, at *5-*8 (S.D. Ohio Mar. 28, 2014), did not parse out the statutory language, but its decision to impose liability under Section 7434(a) on both an accounting firm and one of its principals in circumstances much like those present here—an acrimonious breakup of a professional services enterprise—at least implicitly reads the scope of the statute in the same fashion as does this Court.

Although the Court need not examine the legislative history of a statute whose text is unambiguous, see *Ron Pair Enterprises*, 489 U.S. at 241, it notes that the legislative history is consistent with the Court's interpretation. The Joint Committee Print and House Report accompanying the statute both state:

> *Prior Law*
> Federal law provided no private cause of action to a taxpayer who is injured because a fraudulent information return has been filed with the IRS asserting that payments have been made to the taxpayer.
>
> *Reasons for Change*
> Some taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers.

STAFF OF THE JOINT COMM. ON TAXATION, 104th CONG., PART THREE: TAXPAYER BILL OF RIGHTS 2 (Joint Comm. Print 1996), 1996 WL 34405419, at *12; H.R. REP. No. 104-506, at 35 (1996). Key here is the language indicating that § 7434 addresses the "significant personal loss

and inconvenience" caused by "persons intent on either defrauding the IRS or harassing taxpayers." *Id.* A principal required to file a return and an agent who prepares the return and causes it to be filed are equally capable of causing "significant personal loss and inconvenience." *Id.* They are also equally capable of intending to "defraud[] the IRS or harass[] taxpayers." *Id.* Hall's conduct, as alleged, fits well within the type of conduct that the legislative history addressed. As Keystone's president and secretary, he allegedly used his control over its finances, its recordkeeping, and its tax filings to report false information about Angelopoulos in Keystone's returns. As a person allegedly "intent on either defrauding the IRS or harassing taxpayers" through Keystone's returns, Halls appears to be precisely the type of person whose conduct the legislative history addressed. *Id.*

Defendants' reading of the statute would be incongruous with the legislative intent in two ways. First, it would fail to deter an agent working alongside or on behalf of a principal who (perhaps unbeknownst to the principal) willfully prepares a fraudulent tax return and causes it to be filed. The agent could reap the benefits of the fraud while shifting the costs onto the principal. Second, where an entity and one of its shareholders together cause the willful filing of a fraudulent return that harms another shareholder, the statute would undercompensate the victim-shareholder. A judgment against the entity (and only the entity) would ratably reduce the profits of each shareholder, including the shareholder-victim, such that the shareholder-victim would effectively have to compensate himself. Meanwhile, the fraudulent shareholder-preparer would pay a fraction of the total judgment in the form of reduced profits. This outcome of underdetering the fraudulent shareholder and undercompensating the victim-shareholder is at odds with the legislative intent. The Court therefore rejects Defendants' argument that Hall is an improper Defendant.

Defendants move to dismiss Count I against all three Defendants on an additional ground. Citing the ancient common law rule that the release of one joint tortfeasor is the release all joint-tortfeasors, they argue that Plaintiff's settlement with the Dubin Defendants released all of the Defendants. In response, Plaintiff argues that the common law rule is inapplicable because his settlement agreement expressly preserved a right of action as to the remaining Defendants. "Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law[.]" *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000); accord *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996); *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002). In interpreting settlement agreements, Illinois courts distinguish between a release and a covenant not to sue. *Pate v. City of Sesser*, 393 N.E.2d 1146, 1149 (Ill. App. Ct. 1979). "A release extinguishes a cause of action whereas a covenant not to sue affects only the right to bring suit and not the cause of action itself." *Id.* at 236-37; accord *Solaia Tech. LLC v. ArvinMeritor, Inc.*, 2006 WL 695699, at *12 (N.D. Ill. Mar. 16, 2006). Thus, "an unqualified release of one joint tortfeasor operates to discharge all joint tortfeasors, while a covenant not to sue has no such effect." *Pate*, 393 N.E.2d at 1149. "When called upon to determine whether a given document is to be construed as a release or a covenant not to sue, courts in Illinois have held the intention of the parties to be controlling." *Id.* at 1149-50. Accordingly, an agreement that unambiguously preserves a right of action as to certain defendants is a covenant not to sue, not a release. *Id.* at 1150 (citing *Parmelee v. Lawrence*, 44 Ill. 405, 413 (1867)); see also *Cherney v. Soldinger*, 702 N.E.2d 231, 234 (Ill. App. Ct. 1998). The settlement agreement here expressly preserves a right of action against the remaining Defendants. The intent of the parties is therefore clear, and the agreement does not discharge the remaining Defendants from the suit.

After seeing the settlement agreement attached to Plaintiff's response motion, Defendants changed their argument. Their reply brief now asks the Court to disregard the agreement's language preserving a right of action against them entirely. In support of this argument, they cite Federal Rule of Civil Procedure 37(c)(1), which provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." See Fed. R. Civ. P. 37(c)(1). Prior to filing their motion to dismiss, Defendants submitted an interrogatory asking Plaintiff to provide "the exact language of the release." [252] at 4. In their answer, Plaintiff provided them an excerpt releasing the Dubin Defendants; he did not include the language expressly preserving a right of action against the remaining Defendants. See [252] at 4. Plaintiff then waited until Defendants had filed their motion to dismiss to provide this language to Plaintiff and the Court. Defendants now ask the Court to punish Plaintiff by disregarding this language entirely.

Plaintiff's tactic has caused all parties and the Court to waste time and resources. That said, the Court need not decide the issue. Even if the Court disregarded the language in the agreement, it would not change the outcome. The language in the stipulation of dismissal [190] and the Court's subsequent dismissal order [191] unambiguously indicate that all parties and the Court understood that Plaintiff would proceed with the litigation against the remaining Defendants. The stipulation of dismissal provided that "Plaintiff's cause *against the Defendants, Ira K. Dubin Ltd. d/b/a Green Dubin & Co., and Ira K. Dubin*, shall be dismissed with prejudice, all matters *between them* having been compromised or settled *as to the Defendants, Ira K. Dubin Ltd. d/b/a Green Dubin & Co., and Ira K. Dubin*, which were alleged or could have been alleged[.]" [190] (emphasis added). And the Court's dismissal order explicitly stated that

11

"Plaintiff's cause shall continue as to the Defendants, Keystone Orthopedic Specialists, S.C., Martin R. Hall, and WACHN, LLC." [191]. The Court therefore finds that Plaintiff's settlement with the Dubin Defendants does not preclude its continued litigation against the remaining Defendants. Accordingly, the Court denies Defendants' motion to dismiss Count I against Hall.

### B. Counts II, VI, and VII

Defendants move to dismiss Counts II's claim of fraud, Count VI's claim of breach of contract, and Count VII's claim of unjust enrichment, arguing that all three claims are time-barred because they do not relate back to the original complaint or the FAC. Defendants made this same argument in its response [125] to Plaintiff's motion for leave to file the SAC. The Court rejected it in its April 17, 2014 Order [140], deciding that these claims related back to the original complaint because they arose out of the same conduct. [140] at 3. The TAC generally removed rather than added content from the SAC, so the Court's finding that the SAC related back to the original complaint applies equally to the TAC. Defendants offer no compelling reason why it should not; they generally contend that they are entitled to argue that claims in the TAC are time-barred because the TAC "substantially changed the prior counts and allegations," but they fail to explain why any particular changes in the TAC should alter the Court's previous analysis. [245] at 2. Under the law of the case doctrine, "a court ordinarily will not reconsider its own decision made at an earlier stage of the trial or on a prior appeal, absent clear and convincing reasons to reexamine the prior ruling." *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982): accord *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008). Defendants offer no clear and convincing reason to reexamine the Court's finding of relation-back. Accordingly, that ruling stands with respect to the SAC and TAC, and Defendants' motion to dismiss these counts as time-barred is denied. Defendants' argument that Count II fails to

satisfy Rule 9(b)'s heightened pleading standard fails for the same reason. See [140] at 4 (finding that Plaintiff's factual allegations supporting its claim of fraud satisfied Rule 9(b)).

Defendants also move to dismiss Count VII's claim of unjust enrichment on three additional grounds. First, they argue that unjust enrichment is not an independent cause of action. "Illinois law is arguably somewhat confused on whether a claim of unjust enrichment requires an underlying tort or breach of contract or whether, instead, there can be a free-standing claim based on the proposition that it would be unjust for the defendant to retain a benefit that it obtained at the plaintiff's expense." *Stevens v. Interactive Fin. Advisors, Inc.*, 2015 WL 791384, at *16 (N.D. Ill. Feb. 24, 2015). As the Seventh Circuit noted in *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011), the Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action. See *Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 445 (Ill. 2004) ("Here, plaintiffs have no substantive claim grounded in tort, contract, or statute; therefore the only substantive basis for the claim is restitution to prevent unjust enrichment."); *Indep. Voters v. Ill. Commerce Comm'n*, 510 N.E.2d 850, 852–58 (Ill. 1987) (approving refunds for excessive utility charges where plaintiffs brought a claim for restitution untied to another cause of action); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (articulating the elements of unjust enrichment without reference to a separate underlying claim in tort, contract, or statute); *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998) (ruling that Illinois recognizes an independent cause of action for unjust enrichment based on *HPI Health Care Services*)). Yet "there is a recent Illinois appellate court that suggests the opposite, namely, that an unjust enrichment claim cannot stand untethered from an underlying claim." *Cleary*, 656 F.3d at 516. As the Illinois Appellate Court recently stated,

> *[u]njust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery.* Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct. When an underlying claim of fraud, duress or undue influence is deficient, a claim for unjust enrichment should also be dismissed.

*Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009).

Without definitively resolving the issue, the Seventh Circuit attempted to reconcile this uncertainty in Illinois law by explaining that a claim of unjust enrichment arises when a defendant unjustly retains a benefit to the plaintiff's detriment. The retention of the benefit is often unjust because of some improper conduct that simultaneously gives rise to a claim in tort, contract, or statute. Because the unjust enrichment claim and the related claim arise from the same improper conduct, they frequently rise or fall together. See *Cleary*, 656 F.3d at 517 (citing *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007); see also *Stevens v. Interactive Fin. Advisors, Inc.*, 2015 WL 791384, at *16.

To the extent that there is any conflict in Illinois law, "[t]he Illinois Supreme Court's pronouncements, of course, trump those of lower Illinois courts." *Stevens*, 2015 WL 791384, at *16. In any event, all of this is to give the parties guidance as the litigation proceeds. For now, any apparent conflict between Illinois Supreme Court and Illinois Appellate Court case law does not change the outcome. Plaintiff does not bring a free-standing claim of unjust enrichment; he also states a claim for fraud and breach of contract. Accordingly, Defendants' motion to dismiss is denied on this ground.

Defendants also argue that Plaintiff may not allege unjust enrichment on the theory of breach of an implied-in-law contract with Keystone while alleging breach of an express contract with Keystone in Count VI. Indeed, a claim of unjust enrichment based on an implied-in-law

contract "is inapplicable where an express contract, oral or written, governs the parties' relationship." *Gagnon*, 983 N.E.2d at 1052. As the Illinois Appellate Court has explained,

> [t]he theory of unjust enrichment is an equitable remedy based upon a contract implied in law. Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law. In other words, [w]here there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application.

*Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (2005) (citations and internal quotation marks omitted). This inconsistency is not a problem at the pleadings stage. The Federal Rules of Civil Procedure permit a plaintiff to plead inconsistent claims in the alternative. See Fed. R. Civ. P. 8(d)(2). Accordingly, Plaintiff may allege breach of the Keystone contract while alternatively alleging unjust enrichment.[4] *Id.* Moreover, as explained above, unjust enrichment may be predicated not only on breach of an implied-in-law contract but also on other improper conduct, which Plaintiff has alleged. See *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998). Lastly, Defendants argue that Plaintiff fails to state a claim of unjust enrichment because his allegations are mere boilerplate devoid of factual support. Suffice it to say, a cursory review of Plaintiff's detailed TAC indicates otherwise.

## IV. Conclusion

For the reasons stated above, the Court denies Defendants' motion to dismiss [233].

Dated: May 15, 2015

Robert M. Dow, Jr.
United States District Judge

---

[4] Less clear is whether Plaintiff states a claim of unjust enrichment based on WACHN's failure to purchase his interest when he dissociated from it. Plaintiff already alleges that WACHN had a duty to buy him out either under contract law (Count V) or Illinois corporate law (Count IV). Based on these alternative theories and the applicability of Illinois corporate law in particular, an unjust enrichment claim based on a failure to purchase his interest may not be viable. The parties may wish to address this issue at a future stage in the litigation.