UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. NICHOLAS ANGELOPOULOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-cv-05836 |
| ) | |
| KEYSTONE ORTHOPEDIC SPECIALISTS, ) | |
| S.C., WACHN, LLC, MARTIN R. HALL, ) | Hon. Robert M. Dow, Jr. |
| M.D., IRA K. DUBIN LTD. d/b/a GREEN ) | |
| DUBIN & CO., and IRA K. DUBIN, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' COMBINED MOTION IN LIMINE PURSUANT TO FEDERAL RULE
OF EVIDENCE 104(A) AND PARAGRAPH 12 OF JUDGE DOW'S STANDING ORDER**

Defendants KEYSTONE ORTHOPEDIC SPECIALISTS, S.C. ("Keystone"), WACHN, LLC ("WACHN") and MARTIN R. HALL, M.D. ("Dr. Hall") (hereinafter, collectively "Defendants"), pursuant to Federal Rule of Evidence 104(a) and Paragraph 12 of Judge Dow's Standing Order, for their Combined Motion in Limine, submit as follows:

**I. Introduction**

Defendants' Combined Motion consists of eleven distinct motions in limine: (1) Motion in Limine 1 on the Centier Mortage/Lien on the WACHN property; (2) Motion in Limine 2 on the Form 1099 issued by Keystone to George Cloud; (3) Motion in Limine 3 on the text message from Merritt Roalsen to Plaintiff about a Schedule K-1; (4) Motion in Limine 4 on surveillance photos of Dr. Hall at or outside Dr. Chang's office; (5) Motion in Limine 5 on Dr. Hall and Diane Hall's personal tax returns; (6) Motion in Limine 6 on Jenner & Block invoices; (7) Motion in Limine 7 on Dr. Hall's affiliation with Hind General Hospital, LLC; (8) Motion in Limine 8 on documents subpoenaed from Tom Boecker, a part owner of Midwest Diagnostics; (9) Motion in

Limine 9 on reference to Keystone/Dr. Hall's disputes with other physicians; (10) Motion in Limine 10 on reference to purported character evidence of Dr. Hall; and (11) Motion in Limine 11 on Plaintiff's Expert Jay Sanders' Opinion No. 6 and use of Medical Group Management Association (MGMA) statistics. Defendants' Combined Motion in Limine is premised upon the argument that certain evidence or topics are either irrelevant to the claims or defenses in this matter, or in the event they are relevant, would serve a more prejudicial than probative value if presented to the jury. On such basis, Defendants move to bar the evidence or bar reference to such topics at trial.

## II. Legal Standard

The "motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). District courts have "broad discretion in ruling on evidentiary questions during trial or before on motions *in limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). A motion in limine "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purposes." *Jonasson*, 115 F.3d at 440. The moving party bears the burden of establishing that the evidence is not admissible for any purpose. *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009).

## III. Argument

    A.    **Motion in Limine 1**
           **Centier Mortage/Lien on the WACHN property**
           *Plaintiff's Trial Exhibit No. 13*

Plaintiff's Trial Exhibit No. 13, which is a mortgage between Centier Bank and WACHN,

2

LLC ("WACHN") should be barred from being introduced or referenced at trial. WACHN is a limited liability company that was, at one time, equally owned by all of the Keystone physicians, including Plaintiff Dr. Angelopoulos ("Plaintiff"). WACHN is located at 3310 West 177th Street, Units 2A, 2B and 2C, Hazelcrest, Illinois 60429. Plaintiff seeks to introduce Exhibit No. 13, which is a mortgage between Centier Bank and WACHN dated April 29, 2011 in the amount of $4,694,841.75.[1] (Plaintiff's Trial Exhibit No. 13 bates-labeled NA001947-NA001958 is attached hereto as **Exhibit "A"**). Plaintiff states that he disassociated from WACHN in 2007. The Centier mortgage/lien was placed on the WACHN property in 2011. Plaintiff had no legal responsibility for the Centier mortgage/lien either as a maker or guarantor, since he was neither. On September 2, 2016, a Release of Mortgage and Termination Statement was entered into between Centier Bank, the Mortgagee, and WACHN, the Mortgagor, and was recorded with the Cook County Recorder of Deeds on September 29, 2016 (attached hereto as **Exhibit "B"**). Due to the fact that the Centier mortgage/lien on WACHN was unrelated to Plaintiff's ownership of WACHN property and was satisfied or released far in advance of trial, it is entirely irrelevant to Plaintiff's claims or any of Defendants' defenses. Consequently, Plaintiff should be barred from using Exhibit No. 13 or otherwise referencing the Centier mortgage/lien involving WACHN at trial. Alternatively, should Plaintiff's Trial Exhibit No. 13 not be barred, Defendants reserve the right to use Exhibit B at trial.

    **B.**    **Motion in Limine 2**
            **Form 1099 issued to George Cloud**
            *Plaintiff's Trial Exhibit No. 14*

Plaintiff's Trial Exhibit 14, which is a Form 1099 issued by Keystone to a former

---

[1] The Condominium Rider issued on April 29, 2011 was incorporated into and deemed to amend and supplement the Mortgage between Varsity Medical Center, LLC and Centier Bank on June 20, 2007. The Mortgage was previously modified by a Renewal Note dated August 21, 2007, a Debt Modification Agreement dated August 22, 2008 and a Modification of Loan Documents dated June 30, 2009.

Keystone staff employee George Cloud ("Cloud"), should be barred from being introduced or referenced at trial. (Plaintiff's Trial Exhibit No. 14 bates-labeled NA000312-000319, attached hereto as **Exhibit "C"**). Plaintiff is believed to be offering Exhibit 14 to demonstrate that "Hall has made a practice of retaliating against former associates with phony filings to the IRS [because] [h]e '1099'd' a former Keystone staff member named George Cloud in 2007 for a van that Keystone bought for Cloud in 2001. (NA 312-319). (Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition Brief"), CM/ECF Doc. No. 283, at 9 attached hereto as **Exhibit "D"**). Plaintiff argued in his Opposition Brief that "[w]hen Cloud sent a letter to Hall alerting Hall to the fact that the amount of the 1099-MISC was higher than it should have been, Hall threatened him by stating: 'It is what it is. I can still 1099 you for the entire price.'" (NA 313) (Exhibit D).

"Rule 404(b) provides that evidence of other acts is inadmissible 'to prove the character of a person in order to show action in conformity therewith' but may be admissible for other purposes, such as proof of motive, opportunity, intent, plan, knowledge, identity, or absence of mistake or accident." *United States v. Hicks*, 635 F.3d 1063, 1069 (7th Cir. 2011) (citation omitted). When determining whether evidence is properly admitted under Rule 404(b), the court considers whether: (1) the evidence is directed toward establishing a matter at issue other than the defendant's propensity to commit the conduct in question, (2) the evidence shows that the other act is similar and close enough in time to be relevant to the matter at issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice pursuant to Federal Rule of Evidence 403. *See id.*; *see also Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 645 (7th Cir. 2011).

Here, by his own admission, Plaintiff is offering Trial Exhibit No. 14 to demonstrate that Keystone or Dr. Hall have a propensity to issue Form 1099s to Keystone employees as a means of retaliation. Unlike Plaintiff, Cloud was not a Keystone physician and was issued a Form 1099 for a van that Dr. Hall gave him years prior. On the other hand, Plaintiff was issued a Form 1099-MISC in 2007 for purposes of cancelling debt he owed to Keystone in the amount of $121,567.00, which needed to be reported as income. In conjunction with the fact that Plaintiff has not alleged any pattern or practice claims against Defendants in his Third Amended Complaint, admitting such evidence against Defendants would be more prejudicial than probative. Therefore, Plaintiff should be barred from using Trial Exhibit No. 14 or otherwise referencing a Form 1099 being issued to Cloud by Keystone or Dr. Hall at trial.

    C.    **Motion in Limine 3**
           **Text Message from Merritt Roalsen about a Schedule K-1**
           *Plaintiff's Trial Exhibit No. 22*

Plaintiff's Trial Exhibit No. 22, which is a text message from Merritt Roalsen ("Roalsen") to Plaintiff about being issued a Schedule K-1 by Dr. Hall, is irrelevant and should be barred from being introduced or referenced at trial. (Plaintiff's Trial Exhibit No. 22 is attached hereto as **Exhibit "E"**). In Plaintiff's Opposition Brief, he alleges that Dr. Hall "submitted a K-1 on behalf of Roalsen after Roalsen left the practice that Roalsen believes was fake and inaccurate." (Exhibit D, at 9 (internal citations omitted). First, Defendants anticipate that Plaintiff's Trial Exhibit No. 22 is being offered to demonstrate that Keystone or Dr. Hall had a propensity of issuing false tax documents, which Federal Rule of Evidence 404(b) prohibits. Second, Mr. Roalsen testified during his deposition that when he referred to the K-1 as fake, he meant only that the amount was inaccurate, and indicated he was uncomfortable with any insinuation that he meant otherwise. (Deposition Transcript of Merritt Roalsen is attached hereto as **Exhibit "F",** at 102-

5

03). Third, Plaintiff was never issued a K-1 by Keystone or Dr. Hall and therefore, the issuance of a K-1 to Mr. Roalsen by MedStaff, a different company, is irrelevant to Plaintiff's claims. (Exhibit F, at 104). As such, the probative value of the evidence is outweighed by the prejudice to Defendants. Therefore, Plaintiff should be barred from using Trial Exhibit No. 22 or otherwise referencing text messages from Merritt Roalsen to Plaintiff regarding a Schedule K-1 being issued to Mr. Roalsen by Keystone or Dr. Hall at trial.

### D. Motion in Limine 4
### Surveillance photos of Dr. Hall
### *Plaintiff's Trial Exhibit No. 19*

Plaintiff's Trial Exhibit No. 19 are surveillance photos dated February 11, 2014 of Dr. Hall in the parking lot and lobby of the medical practice where a former Keystone physician, Dr. Chang, is employed. They are irrelevant and should be barred from being introduced or referenced at trial. (Plaintiff's Trial Exhibit No. 19 is attached hereto as **Exhibit "G"**.) The surveillance photos were attached to a motion filed by Plaintiff on February 28, 2014 to hold Dr. Hall in contempt of court because he indicated he was unavailable to be deposed as the Rule 30(b)(6) representative of MedStaff Supply, Inc. and Vertical Plus MRI of America, LLC on February 11, 2014, the same day he appeared in the surveillance photos at or outside Dr. Chang's office. (Plaintiff's Motion to Hold Martin R. Hall in Contempt of Court, CM/ECF Doc. No. 116 and exhibits are attached hereto as **Exhibit "H"**.) Plaintiff's motion never should have been filed because on February 17, counsel for the parties had already agreed that the Rule 30(b)(6) depositions would be rescheduled to March 11, 2014. In any case, since the motion was filed, Defendants submitted a written Response and Affidavit from Dr. Hall demonstrating that Dr. Hall was scheduled to perform four surgeries on February 11 from 5:45 am to 2:00 p.m. at Hind Hospital in Indiana; however, two of the surgeries were cancelled that morning due to a lack of

patients' insurance, allowing Dr. Hall to unexpectedly finish at Hind Hospital at 9:45 a.m. (Defendant Martin R. Hall's Response to Plaintiff's Motion to Hold Martin R. Hall in Contempt of Court, CM/ECF Doc. No. 119-4, at 3-5 is attached hereto as **Exhibit "I"**.) It was only on his drive back to his Keystone medical practice in Illinois that Dr. Hall stopped at Dr. Chang's office in Dyer, Indiana to give him the courtesy of advising him that his personal records could become part of the public record in this lawsuit. (*Id.* at 4-5.) That same day, Dr. Hall worked at Keystone until 4:00 p.m. and then taught at Loyola Medical School from 4:30 p.m. until 10:30 p.m., all of which prevented him from sitting for the Rule 30(b)(6) depositions in Chicago, contrary to Plaintiff's accusations. (*Id.* at 5.) Magistrate Judge Martin denied Plaintiff's motion to hold Dr. Hall in contempt and indicated on the record that Dr. Hall would sit as the Rule 30(b)(6) representative of MedStaff and Vertical Plus on March 11, as the parties had agreed. (*See* Minute Entry dated March 6, 2014, CM/ECF Doc. No. 120 attached hereto as **Exhibit "J"**.) Considering the Court's ruling on Plaintiff's motion and the fact that Dr. Hall was indeed deposed in this litigation, there is no relevance or probative value to showing the surveillance photos of Dr. Hall at Dr. Chang's office to the jury. Therefore, Plaintiff should be barred from using Plaintiff's Trial Exhibit No. 19 or otherwise referencing the surveillance photos of Dr. Hall at trial.

### E. Motion in Limine 5
### Dr. Hall's personal tax returns
### *Plaintiff's Trial Exhibit No. 1*

Plaintiff's Trial Exhibit No. 1, which is Dr. Hall and his wife, Diane Hall's personal federal and state tax returns for years 2005-2007, are irrelevant and should be barred from being introduced or referenced at trial. (Plaintiff's Trial Exhibit No. 1 bates-labeled KEYSTONE000320-000413 is attached hereto as **Exhibit "K"**.) It is believed that Plaintiff

7

seeks to introduce Dr. Hall's personal tax returns in an effort to demonstrate his wealth and net worth in those years to the jury.[2] Such documents are highly confidential, and courts have found that evidence of a party's net worth should be considered with great care. *See Arroyo v. Volvo Grp. North Am., LLC*, No. 12-cv-6859, 2016 U.S. Dist. LEXIS 102286, at *6 (N.D. Ill. Aug. 4, 2016) (Dow, Jr., Robert) (citing *El-Bakly v. Autozone, Inc.*, 2008 U.S. Dist. LEXIS 31285, at *5 (N.D. Ill. Apr. 16, 2008)). While evidence of net worth could be relevant to a claim for punitive damages, it is not always permitted for this purpose. *See, e.g., Arroyo*, 2016 U.S. Dist. LEXIS 102286, at *6 (Judge Dow granted the defendant's motion in limine to bar evidence of financial condition). Just as was the case in *Arroyo*, it would not be a worthwhile exercise to present approximately 100 pages of Dr. Hall's and his wife's personal tax returns in order to demonstrate his net worth to the jury. *See id.* at *9-10. Moreover, Dr. Hall's personal tax returns are for years 2005-2007 and courts have held that "past earnings and worth cannot reasonably lead to relevant information on the issue of punitive damages." *Platcher v. Health Prof'ls, Ltd.*, No. 04-1442, 2007 U.S. Dist. LEXIS 68838, at *10 (C.D. Ill. Sept. 18, 2007). Therefore, Plaintiff should be barred from using Plaintiff's Trial Exhibit No. 1 or otherwise referencing Dr. Hall's net worth at trial.

 **F. Motion in Limine 6**
   **Jenner & Block invoices**
   *Plaintiff's Trial Exhibit No. 15*

Plaintiff's Trial Exhibit No. 15, which consists of Jenner and Block invoices issued to Plaintiff, is overbroad and therefore, in part, irrelevant to this litigation and should be barred from being introduced or referenced at trial. (Plaintiff's Trial Exhibit No. 15 bates-labeled NA 000789-850 is attached hereto as **Exhibit "L"**.) Plaintiff presumably seeks to introduce Trial

---

[2] To the extent Plaintiff seeks to offer the tax returns for some other purpose, there is absolutely no basis for their admission.

8

Exhibit No. 15 for purposes of supporting an attorney's fees petition. Attorneys from Jenner & Block represented Plaintiff in a federal tax matter[3] prior to this litigation involving the same Form 1099-MISC issued to Plaintiff by Keystone for tax year 2007 that is the subject of Count I in this matter, and, possibly, in addition to other issues. Jenner & Block also filed the instant lawsuit on behalf of Plaintiff and continued to represent him in this litigation until approximately November 25, 2013 when attorneys from The Gair Law Group (n/k/a Gair Eberhard Nelson & Dedinas Ltd.) substituted their appearance as Plaintiff's counsel. (Attorney Appearances, CM/ECF Doc. Nos. 67-69.) The Jenner & Block invoices, which are redacted in large part, are overbroad because they do not distinguish which work was in relation to the Form 1099-MISC issued to Dr. Angelopoulos versus the work that was not. The invoices contain broad time entries for drafting and revising the tax court petition, researching tax court rules, issuing subpoenas in the tax court matter, drafting motions in the tax court matter, appearing for tax court hearings and IRS issues. (*See, e.g.,* Exhibit K, NA000794, 798-99, 801-03, 811, 814, 820, 823, 827, 830-31, 835, 839, 845, 849). It is unclear whether or not the entirety of the legal work performed by Jenner & Block pertained to the Form 1099-MISC issued by Keystone to Plaintiff. Defendants seek to bar Plaintiff from introducing the portions of the Jenner & Block invoices that pertain to legal advice other than that related to the Form 1099-MISC issued by Keystone to Dr. Angelopoulos for tax year 2007. At a minimum, to the extent the resolution of the tax court matter involved Plaintiff paying additional taxes, the entirety of the Jenner & Block invoices cannot be considered relevant.

  **G. Motion in Limine 7**
    **Dr. Hall's affiliation with Hind General Hospital, LLC**
    *Plaintiff's Trial Exhibit No. 28*

Plaintiff's Trial Exhibit No. 28, which is documents subpoenaed from Hind General

---

[3] *Angelopoulos v. Commissioner of Internal Revenue,* No. 20335-11 (U.S. Tax Court).

Hospital, LLC ("Hind Hospital"), are irrelevant to this litigation and should be barred from being introduced or referenced at trial. (Plaintiff's Trial Exhibit No. 28 bates-labeled Hind0001-00027 is attached hereto as **Exhibit "M"**.) The documents reflect Dr. Hall's independent practitioner affiliation with Hind Hospital as medical staff between 2006 and 2010. (*See* Exhibit M.) In pertinent part, the subpoenaed documents include Form 1099s and QuickReports showing payments from Hind Hospital to Dr. Hall during such time period. It is unclear why Dr. Hall's affiliation with Hind Hospital after Plaintiff's departure from Keystone would have any relevance to Plaintiff's claims. Upon information and belief, it is believed that such documents are sought to be introduced by Plaintiff as additional evidence of Dr. Hall's net worth. For the same reasons stated in Motion in Limine 5, Plaintiff's Trial Exhibit No. 28 should be barred from use or otherwise being referenced at trial.

        H.        **Motion in Limine 8**
                 **Reference to documents subpoenaed from Tom Boecker**
                 *Plaintiff's Trial Exhibit No. 27*

Plaintiff's Trial Exhibit No. 27, which are documents that were subpoenaed from Tom Boecker, a part owner of Midwest Diagnostics, a company that Keystone had a contract with, are irrelevant to this litigation and should be barred from being introduced or referenced at trial. (Plaintiff's Trial Exhibit No. 27 bates-labeled NA/Boecker000003-000004 is attached hereto as **Exhibit "N"**.) More specifically, the two documents appear to be hand-written notes of the amounts paid by Midwest Diagnostics to Keystone on a monthly basis from July 2007 through April 2010. First, considering Plaintiff resigned from Keystone in late 2007, the relevance of such records is unknown. Second, the money received by Keystone from a vendor like Midwest Diagnostics is irrelevant to the claims or defenses in this matter. Third, there is a lack of foundational basis to allow such hand-written notes, and Plaintiff has failed to authenticate them.

The documents are hearsay over which no hearsay exception appears to apply. To the extent Plaintiff argues that the business record exception to the hearsay rule applies, Plaintiff has not submitted any evidence (a) about when the business record was created or by whom, (b) that it was kept in the course of regularly conducted business activity of Midwest Diagnostics, (c) that making the record was a regular practice of Midwest Diagnostics, or (d) that these conditions were met by any testimony of a custodian or other qualified witness. *See* Fed. R. Evid. 803(6); *see also El-Bakly v. Autozone, Inc.*, No. 04 04 C 2767, 2008 U.S. Dist. LEXIS 31285, at \*5 (N.D. Ill. Apr. 16, 2008). Therefore, for the reasons provided, Plaintiff's Trial Exhibit No. 27 should be barred from use or otherwise being referenced at trial.

## I. Motion in Limine 9
### Reference to Keystone/Dr. Hall's disputes with other physicians

Drs. Keith Pitchford, Blair Rhode and Michael Hartman are orthopedic surgeons who were once employed at Keystone, but never during the same time as Plaintiff. To the extent that Plaintiff seeks to elicit testimony from any witness or otherwise present evidence about disputes between Drs. Pitchford, Rhode or Hartman and Keystone/Dr. Hall, such testimony and evidence should be barred as being irrelevant to the claims or defenses in this matter. Even if such testimony is found to be relevant, its probative value is substantially outweighed by unfair prejudice to Defendants, confusing the issues and the likelihood it will mislead the jury. *See* F.R.E. 403. Further, the dispute between Keystone and Dr. Pitchford involved litigation over the terms of Dr. Pitchford's restrictive covenant, something that Plaintiff never had with Keystone. Additionally, Dr. Pitchford worked at Keystone's Munster, Indiana office, not in Hazelcrest, Illinois where Plaintiff worked. And, Dr. Pitchford was employed from 1999 to 2000, which was four years prior to Plaintiff being employed by Keystone. Therefore, for the reasons stated, testimony about any disputes between Drs. Pitchford, Rhode or Hartman and Keystone/Dr. Hall

should be barred from being given at trial.

  **J.**  **Motion in Limine 10**
     **Purported character evidence of Dr. Hall**

To the extent that Plaintiff seeks to present evidence of Dr. Hall's alleged prior bad acts as character evidence in order to show conformity with those prior bad acts, such evidence is inadmissible pursuant to Federal Rule of Evidence 404(b). *See Walker v. County of Cook*, No. 05 C 5634, 2009 U.S. Dist. LEXIS 1636, at *3 (N.D. Ill. Jan. 9, 2009) (granting the defendant's motion in limine to bar prior bad acts as character evidence pursuant to Federal Rule of Evidence 404(b)).

  **K.**  **Motion in Limine 11**
     **Plaintiff's Expert Jay Sanders: Opinion No. 6; use of Medical Group Management Association (MGMA) statistics; patient billing income opinions; patient billing receivable opinions**

    1.  <u>Sanders Opinion No. 6</u>

Defendants seek to bar Opinion Number 6 of Plaintiff's Expert, Jay Sanders ("Sanders") on the grounds that it uses unreliable methodology. (The Amended Expert Report of Jay Sanders is attached hereto as **Exhibit "O"**; Deposition Transcript of Jay Sanders is attached hereto as **Exhibit "P"**.) In it, Sanders attributes Great Lakes Bank's refusal to remove Plaintiff as a personal guarantor of the WACHN $1.42 million loan balance as being Dr. Hall's fault. When pressed on why he concluded that Dr. Hall was to blame for Plaintiff not being removed from his personal WACHN guarantees, Sanders could only explain it by speculating that if someone of "Dr. Hall's net worth" was to call up Great Lakes Bank and seek to have himself substituted for Plaintiff, then "Great Lakes Bank while not required to release Dr. Angelopoulos would probably be very foolish not to fulfill his request." (Exhibit P, at 185.) Further, by his own concession, Sanders testifies that his opinion is premised upon Plaintiff having dissociated from WACHN,

12

something which Sanders was unsure actually occurred. Coupled with the fact that Sanders spoke to no one at Great Lakes Bank and did no independent research aside from just "thinking it through", his opinion can hardly be characterized as being based on sound methodology. For these reasons, which are discussed in greater detail within Defendants' *Daubert* Motion, Sanders' Opinion 6 should be barred from being introduced at trial. (Defendants' *Daubert* Motion to Exclude Portions of the Report and Opinion Testimony of Plaintiff's Expert Jay Sanders Pursuant to Federal Rule of Evidence 702 and exhibits, CM/ECF Doc. Nos. 311, 309-1, 309-2 are attached hereto as **Group Exhibit "Q"**.)

        2.      MGMA Statistics
              *Plaintiff's Trial Exhibit No. 29*

Plaintiff's expert, Jay Sanders, relied on MGMA statistics for purposes of reaching his Opinion Number 3 that Plaintiff was wrongly charged $599,168 for excess overhead versus industry norms. (Exhibit O, at 4, 32; Exhibit P, at 101-02, 154, 158).

First, Sanders conceded that a deviation from an industry norm is not per se evidence of wrongdoing or problems with the accounting system (*see infra* page 14). It, therefore, has no bearing on a breach of contract, fraud or breach of fiduciary duty claims.

Comparing the average expenses for orthopedic surgeons in the MGMA Physician Compensation and Production Survey for Single Specialty Practices 2008 Report to the actual expenses of Keystone from 2004 to 2007 is irrelevant to Plaintiff's claims. Plaintiff was not an orthopedic surgeon and Sanders concedes that pain management specialists like Plaintiff generate less revenue than orthopedic surgeons. It is comparing apples to oranges.

The MGMA data that Sanders used was the national mean for all single-specialty orthopedic surgery practices. Sanders failed to take into account that the national mean will be different from an orthopedic surgery practice employing one or more non-orthopedic surgeons

13

located in Hazel Crest, Illinois, a village in Cook County, with a population of 14,000 people. Defendants' expert, Michael Pakter ("Pakter"), in his Rebuttal Expert Report (attached hereto as **Exhibit "R"**, at 51-52).

> Sanders recognized that it is possible that industry averages will have nothing to do with a specific medical practice as follows:
>
> **Q: In comparing things to industry norms, there is a risk that the norm will have no relationship to the specific practice that you're comparing it to, is that correct?**
>
> A: Correct
>
> **Q: And in fact, by definition norms are just that, averages, is that correct?**
>
> A: That's what you said.
>
> **Q: So some practices will be – have more expenses, and some are going to have less?**
>
> A: That's right.

(Exhibit P, at 154:8-18).

Moreover, the MGMA cautions users on the limitations of its data as follows: it is recommended to use caution in interpreting the data in this report. The report is based on a voluntary response by primarily MGMA member practices and data may not be representative of all providers in medical practices. Providers in the responding organizations may have different compensation and productivity than providers in practices that did not respond to the survey or were not MGMA members. Additionally, note that the respondent sample varies from year to year. Therefore, conclusions about longitudinal trends or year-to-year fluctuations in summary statistics may not be appropriate.

(Exhibit R, at 51-52).

For the reasons stated, Sanders' deposition testimony and expert report which discusses or

relies upon MGMA statistics, should be barred at trial.

### IV. Meet and Confer Statement Per Paragraph 12(a) of Judge Dow's Standing Order

Counsel for Defendants met and conferred with counsel for Plaintiff on April 4, 2017 and determined that the matters upon which rulings are sought by way of this Combined Motion in Limine are actually in dispute.

### V. Conclusion

WHEREFORE, Defendants KEYSTONE ORTHOPEDIC SPECIALISTS, S.C., WACHN, LLC and MARTIN R. HALL, M.D. respectfully request that this Honorable Court grant their Combined Motion in Limine Pursuant to Federal Rule of Evidence 104(a) and Paragraph 12 of Judge Dow's Standing Order, and for such other and further relief as this Court deems just in Defendants' favor.

Respectfully submitted,

KEYSTONE ORTHOPEDIC
SPECIALISTS, S.C., WACHN, LLC, and
MARTIN R. HALL, M.D.

*/s/ Arthur M. Holtzman*
By: _____
One of their Attorneys

Arthur Holtzman (#1252844)
Naureen Amjad (#6295770)
PEDERSEN & HOUPT
161 North Clark Street
Suite 2700
Chicago, Illinois 60601
(312) 641-6888
aholtzman@pedersenhoupt.com
namjad@pedersenhoupt.com