# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DR. NICHOLAS ANGELOPOULOS,     )

          )

          Plaintiff,    )    Case No. 12-cv-05836

          )

v.          )

          )    Hon. Robert M. Dow, Jr.

KEYSTONE ORTHOPEDIC SPECIALISTS,    )

S.C., WACHN, LLC, MARTIN R. HALL, M.D.    )

          )

          )

          Defendants.    )


## PLAINTIFF'S MOTION FOR ENTRY OF
## JUDGMENT UNDER RULE 58

# **Contents**

Table of Authorities ....................................................................................................... 3

Introduction .................................................................................................................... 4

Argument ........................................................................................................................ 4

   I.   Plaintiff is Entitled to an Award of Compensatory Damages on Count 1. ......................... 4

       A.    Damages under 26 U.S.C. § 7434 Include the Costs and Fees Incurred in Defending Against the Tax Liability, the Costs of Bringing the 7434 Action and the Reasonable Attorneys' and Expert Witness Fees Incurred in the Action. ........ 4

       B.    Dr. Angelopoulos is entitled to costs and fees here in the amount of $327,486.88.8

   II.   Plaintiff is Entitled to an Award of Prejudgment Interest on the Remaining Counts. ....... 13

       C.    An Award of Prejudgment Interest is a Required Component of Damages Under the Illinois Interest Act and an Appropriate Component of Damages Under Principles of Equity. ............................................................................................. 13

       D.    Dr. Angelopoulos is Entitled to an Award Under the Interest Act. ..................... 14

       E.    In Any Event, Dr. Angelopoulos is Entitled to an Equitable Award of Interest... 18

       F.    Timing and calculation of interest ....................................................................... 19

   III.  Plaintiff Should Be Awarded Equitable Relief on Count 3 Requiring Dr. Hall and Keystone to Indemnify and Hold Dr. Angelopoulos Harmless for the WACHN Guaranty..... 20

   IV.  The Judgment Should Be Allocated in Order to Avoid Double Recovery. ....................... 20

Conclusion ...................................................................................................................... 22

## Table of Authorities

**Cases**

*612 N. Michigan Ave. Bldg. Corp. v. Factsystem, Inc.*, 54 Ill. App. 3d 749 (1st Dist. 1977) ...... 15

*Ash v. Georgia-Pac. Corp.*, 957 F.2d 432 (7th Cir. 1992)............................................................ 17

*Bailey v. Shell W. E&P, Inc.*, 1998 WL 185520 (N.D. Tex. Apr. 14, 1998) ........................... 6, 13

*Branham v. Snow*, 2006 WL 1750443 (S.D. Ind. June 19, 2006).................................................. 8

*Bright v. Land O'Lakes, Inc.*, 844 F.2d 436 (7th Cir. 1988) ......................................................... 8

*Brulin & Co., Inc. v. Higgins*, 1987 WL 10304 (N.D. Ill. Apr. 30, 1987)................................... 14

*Chicago Title & Trust Co. v. First Arlington Nat. Bank*, 118 Ill. App. 3d 401 (1st Dist. 1983).. 19

*Duran v. Town of Cicero, Illinois*, 653 F.3d 632 (7th Cir. 2011) ................................................ 21

*Emmenegger Const. Co., Inc. v. King*, 103 Ill. App. 3d 423 (5th Dist. 1982)............................. 14

*Gen. Dynamics Corp. v. Zion State Bank & Trust Co.*, 86 Ill. 2d 135 (1981)............................. 18

*Heiar v. Crawford Cty., Wis.*, 746 F.2d 1190 (7th Cir. 1984) ...................................................... 8

*In re Estate of Wernick*, 127 Ill. 2d 61 (1989) ......................................................... 13, 14, 18, 19

*In re Joy Recovery Tech. Corp.*, 291 B.R. 111 (Bankr. N.D. Ill. 2003) ...................................... 19

*Kerasotes v. Estate of Kerasotes*, 238 Ill. App. 3d 1020 (4th Dist. 1992).................................. 19

*Liverett v. Torres Advanced Enter. Sols. LLC*, 192 F. Supp. 3d 648 (E.D. Va. 2016) ................. 6

*Marcus & Millichap Real Estate Inv. Services Inc. v. Sekulovski*, 2010 WL 145785
   (N.D. Ill. Jan. 12, 2010) ..................................................................................................... 14, 16

*Michaels v. Michaels*, 767 F.2d 1185 (7th Cir. 1985) ................................................................ 18

*Milligan v. Gorman*, 348 Ill. App. 3d 411 (1st Dist. 2004) ........................................................ 13

*Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725.................... 14, 18

*NC Illinois Trust Co. v. First Illini Bancorp, Inc.*, 323 Ill. App. 3d 254 (3d Dist. 2001)............ 19

*Neumann v. Neumann*, 334 Ill. App. 3d 305 (3d Dist. 2002) ...................................................... 18

*Obermaier v. Obermaier*, 128 Ill. App. 3d 602 (1st Dist. 1984) ................................................ 19

*Prignano v. Prignano*, 405 Ill. App. 3d 801 (2d Dist. 2010)...................................................... 18

*Riordan v. ASAP Expert Counseling, LLC*, 2017 WL 2225223 (D. Kan. May 19, 2017) ....... 7, 11

*RRK Holding Co. v. Sears, Roebuck & Co.*, 563 F. Supp. 2d 832 (N.D. Ill. 2008)..................... 19

*Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156 ........................................... 13, 14, 18

*Shiner v. Turnoy*, 2014 WL 3907043 (N.D. Ill. Aug. 11, 2014).................................................... 7

*Thornton v. Garcini*, 382 Ill. App. 3d 813 (3d Dist. 2008)......................................................... 21

*Tully v. McLean*, 409 Ill. App. 3d 659 (1st Dist. 2011).......................................................... 13, 18

*U.S. for Use & Benefit of Treat Bros. Co. v. Fid. & Deposit Co. of Maryland*,
   986 F.2d 1110 (7th Cir. 1993) ............................................................................................ 15, 18

*Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 63 F.3d 516 (7th Cir. 1995) ........................ 8

**Statutes**

26 U.S.C. § 7434.................................................................................................................... 4, 5, 9

28 U.S.C. § 1367 .......................................................................................................................... 9

815 ILCS 205/2 ...................................................................................................................... 13, 14

**Other Authorities**

H.R. Rep. No. 14-506 (1996)............................................................................................... 6, 7, 13

<u>**Introduction**</u>

Plaintiff respectfully moves for entry of judgment on the jury's verdict in this case and on certain relief reserved for determination by the Court. The jury's verdict found for Plaintiff as to liability on Count 1 (violation of 26 U.S.C. § 7434) and found for Plaintiff as to liability and awarded damages on Counts 2 (fraud), 3 (breach of fiduciary duty), 5 (breach of WACHN Operating Agreement) and 6 (breach of Keystone agreement) as follows:

| Count: Defendant | Compensatory | Punitive |
|---|---|---|
| Count 2: Keystone | $454,000 | |
| Count 2: Hall | $454,000 | $1,000,000 |
| Count 3: Hall | $908,000 | $1,000,000 |
| Count 5: WACHN | $111,000 | |
| Count 6: Keystone | $454,000 | |

In addition, Plaintiff seeks entry of judgment on three items of relief specifically reserved to the Court: (1) compensatory damages on Count 1 (violation of 26 U.S.C. § 7434); (2) prejudgment interest on Counts 2, 3, 5 and 6; and (3) equitable relief on Count 3 relating to the WACHN guarantee.

Finally, while in a case involving multiple theories of recovery and multiple defendants, the burden is on the defendants to establish how judgment should be entered in order to avoid a double recovery, Plaintiff respectfully submits his proposal in Section IV of this motion.

<u>**Argument**</u>

I.    <u>Plaintiff is Entitled to an Award of Compensatory Damages on Count 1.</u>

    A.  Damages under 26 U.S.C. § 7434 Include the Costs and Fees Incurred in Defending Against the Tax Liability, the Costs of Bringing the 7434 Action and the Reasonable <u>Attorneys' and Expert Witness Fees Incurred in the Action</u>.

The jury returned a verdict on Count 1 finding Defendants Keystone and Hall liable for willfully filing a fraudulent information return in violation of 26 U.S.C. § 7434 ("Section 7434").

Section 7434 provides a remedy for a person against whom a fraudulent information return has been filed. Specifically, the statute provides:

> **(a) In general.**--If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.
>
> **(b) Damages.**--*In any action brought under subsection (a)*, upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of—
>
>> **(1)** any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing),
>>
>> **(2)** the costs of the action, and
>>
>> **(3)** in the court's discretion, reasonable attorneys' fees.  26 U.S.C. § 7434 (emphasis added).

The plain language of the statute, its legislative history, and the only decisions interpreting the damages provision make clear that Dr. Angelopoulos is entitled to:  the costs and attorney and accountant's fees incurred by Dr. Angelopoulos in resisting the underlying tax liability and pursuing the Tax Court litigation (subsection (b)(1)), the costs of this action (subsection (b)(2)), and attorneys and expert witness fees for pursuing this action (subsection (b)(3)).

At the outset, the attorney and accountant fees charged by Jenner & Block and Vranas & Vlahos, respectively, in connection with the IRS deficiency notice were indisputably "the proximate result" of the fraudulent filing of the 1099 by Hall and Keystone and thus must be awarded under subsection (b)(1). Indeed, that subsection plainly states that all costs "attributable to resolving deficiencies" are covered. It is patently obvious that the work of the law and accounting firms to resolve the tax dispute are properly recovered.

It is just as obvious that all costs of this action are compensable under subsection (b)(2).

And the plain language of subsection (b)(3) provides that the Court may award reasonable attorneys' fees incurred "[i]n any action brought under subsection (a)." While the attorneys' fees are discretionary, there can be no doubt that here the Court's discretion should be exercised to include the attorneys' fees, based on the evidence heard by the Court at trial, the legislative concerns underlying the statute, fundamental notions of justice, and the cases interpreting the statute.

There are powerful reasons set out in the legislative history of the statute supporting the award of these items of compensable damages. In its report of March 28, 1996, the House of Representatives' Committee on Ways and Means explained that the reasoning behind this provision was that "[s]ome taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers." H.R. Rep. No. 14-506, at 35 (1996). As one district court explained, "Congress was aware of a problem—the malicious reporting of false payments—and designed § 7434 to afford a damages remedy for victims of that problem." *Liverett v. Torres Advanced Enter. Sols. LLC*, 192 F. Supp. 3d 648, 654 (E.D. Va. 2016). As another court put it, "[i]f one taxpayer falsely reports to the IRS that another taxpayer has received certain income or made certain payments, the honest taxpayer may be assessed taxes not actually owed, or have to initiate costly proceedings to straighten out the mess." *Bailey v. Shell W. E&P, Inc.*, 1998 WL 185520, at *2 (N.D. Tex. Apr. 14, 1998).

Thus, the Committee explained that Section 7434 would permit a person to "bring a civil action for damages against the person filing [the fraudulent] return," where "recoverable damages are the greater of (1) $5000 or (2) the amount of actual damages (including the costs of the action)

and, in the court's discretion, *reasonable attorney's fees*." H.R. Rep. No. 14-506, at 35 (1996) (emphasis added).

In a case decided just a month ago, a federal court in Kansas awarded a plaintiff attorneys' fees incurred in bringing an action under Section 7434 after entering a default judgment on her claims. *Riordan v. ASAP Expert Counseling, LLC*, 2017 WL 2225223, at *2–3 (D. Kan. May 19, 2017). In *Riordan*, plaintiff filed a complaint against her former employer, alleging common law claims of wrongful termination, breach of contract, and unjust enrichment, along with a claim under Section 7434. The Section 7434 claim was based on plaintiff's employer filing fraudulent returns with the IRS, which misclassified her as an independent contractor rather than an employee and which caused her to have to pay payroll taxes that her employer should have paid. *Id.* at *1. After entering a default judgment against the defendant, the court awarded plaintiff one-hundred percent of her attorneys' fees incurred in bringing the action without separating out work done on the claim under Section 7434 from the state law claims. *Id.* at *2-3; Dkt No. 43 in *Riordan v. ASAP Counseling, LLC*, the United States District Court of the District of Kansas, Case No. 16-cv-2011.

Judge Shadur similarly awarded plaintiff attorneys' fees incurred in pursuing an action under Section 7434 in *Shiner v. Turnoy*, 2014 WL 3907043, at *2 (N.D. Ill. Aug. 11, 2014), reversed on other grounds, 850 F.3d 923 (7th Cir. 2017), holding that plaintiff had established having incurred costs and attorneys' fees and "[i]t would be a major injustice for Shiner to be compelled to bear, unrecompensed, those amounts expended to establish the unlawfulness of Turnoy's willfully fraudulent filing of the 1099."

Also compensable under Section 7434 are the expert fees of Jay Sanders under either (b)(2), as costs of the action, or (b)(3) as part of attorneys' fees. Even where a statute, unlike Section 7434, does not explicitly provide for costs, costs and fees relating to an expert witness are

included in "attorneys' fees." *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.,* 63 F.3d 516, 526 (7th Cir. 1995) (awarding costs relating to plaintiff's expert witness, relying on cases in which "'reasonable attorney's fees' are construed to include the costs of expert witnesses"); *Heiar v. Crawford Cty., Wis.*, 746 F.2d 1190, 1203 (7th Cir. 1984) ("expenses for such things as postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses—are part of the reasonable attorney's fee…"); *Branham v. Snow*, 2006 WL 1750443, at *14–15 (S.D. Ind. June 19, 2006) (awarding expenses relating to plaintiff's expert witnesses under the Rehabilitation Act); *Bright v. Land O'Lakes, Inc*., 844 F.2d 436, 444–45 (7th Cir. 1988) (awarding accountants' fees).

B. Dr. Angelopoulos is entitled to costs and fees here in the amount of $327,486.88.

Count 1 arises out of Keystone and Hall's fraudulent filing of the 1099-MISC for tax year 2007, in which form Defendants fraudulently reported that Dr. Angelopoulos had earned $159,577.45 in miscellaneous income for that tax year. The jury found that the 1099-MISC was fraudulent as to a material matter and that Keystone and Hall filed the fraudulent return willfully, and thus returned a verdict finding Defendants Keystone and Hall liable on Count 1. Because Plaintiff's damages are all costs and fees, and because the defendants insisted pretrial that attorneys' bills not be submitted to the jury as exhibits, the parties agreed prior to trial that those damages were to be awarded by the Court upon a finding of liability by the jury.

As Dr. Angelopoulos testified at trial, because of the fraudulent 1099-MISC and the IRS audit on it, he was forced to hire legal counsel and expend significant amounts of money on legal costs and fees and accountants' costs and fees to contest the Notice of Deficiency. With the assistance of his counsel and his accountants, Dr. Angelopoulos initiated an action in the United States Tax Court, challenging the IRS's Notice of Deficiency (the "Tax Court litigation"). Ultimately, the Tax Court litigation was resolved in Dr. Angelopoulos' favor, such that the IRS eventually agreed that Dr. Angelopoulos was due a refund. Dr. Angelopoulos' legal counsel in the

Tax Court litigation was Jenner & Block. In connection only with the Tax Court litigation, Dr. Angelopoulos incurred $49,758.75 in Jenner & Block legal costs and fees. (*See* Gair Decl. ¶ 22 and Exhibit 3.) Dr. Angelopoulos' accountants, Vlahos & Vranas, also expended significant time and effort in cooperating with the IRS audit and assisting Jenner & Block in the Tax Court litigation. Dr. Angelopoulos incurred fees and costs associated with Vlahos & Vranas' work in resolving the Notice of Deficiency in the amount of $40,875. (Gair Decl. ¶24 and Exhibit 4.) All of these costs and fees are actual damages sustained by Dr. Angelopoulos "as a proximate result of the filing of the fraudulent" 1099-MISC as they were "costs attributable to resolving deficiencies asserted" by the IRS "as a result" of the fraudulent filing. 26 U.S.C. § 7434(b)(1).

In order to recover those significant fees and costs Dr. Angelopoulos was forced to incur as a result of the Tax Court litigation (in addition to other damages Defendants caused him), Dr. Angelopoulos filed this action in July 2012. Federal jurisdiction existed based on the Section 7434 claim; this Court had supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

The filing of the fraudulent 1099-MISC is one of the central issues in this case. Count 1 depended on discovery, investigation, analysis and presentation of proof regarding: (a) Dr. Angelopoulos's income and expenses on the bucket reports, (b) Dr. Angelopoulos' cash reserves, (c) shared income allocated to Dr. Angelopoulos, (d) WACHN's loans with Great Lakes Bank, and (e) Dr. Hall's calculations of amounts supposedly not paid by Dr. Angelopoulos. The "cash reserves" payment and the propriety of the charged expenses in the Bucket Reports were among the primary disputed issues in this case. (*See* Gair Decl. ¶ 6; Dedinas Decl. ¶ 15).

Given the centrality and importance of Count 1, the claim has been highly litigated in this case. Since 2013, Defendants have filed numerous pleadings attacking Count 1, seeking to dispose of it and divest this Court of jurisdiction. (*See* Dkt. Nos. 36, 37, 233, 269). Among other filings,

Defendants filed a motion for summary judgment that reargued pure legal issues already decided on the motions to dismiss, including issues relating to Count 1, and, which improperly set forth the allegedly uncontested facts. (*See* Gair Decl. ¶ 13). Responding to that pleading alone required an enormous amount of time and effort on the part of Plaintiff's counsel. In each pleading challenging Plaintiff's claims, this Court rejected Defendants' arguments. (*See* Dkt. Nos. 82, 257, 303.) In some cases, the Court rejected the same argument two or three times.

In discovery, Dr. Angelopoulos' counsel was required to expend significant time and effort obtaining discovery relevant to Count 1. Defendants' counsel initially produced just 319 pages of documents in response to Plaintiff's broad document requests. It was only through costly discovery motions that Plaintiff was able to obtain documents bearing on the Bucket Reports, the Keystone expenses, and cash reserves, which were necessary to prove up Count 1, including the following:

    a.  Obtaining and reviewing over 10,000 pages of documents from Hall, Keystone and WACHN relating to billings, bucket reports, WACHN loans and the 1099. This required Dr. Angelopoulos to advance and brief four motions to compel (Dkt 70, 88, 144, 195), all of which were granted in part (Dkt 98, 114, 163, 210), and resulted in this court imposing sanctions (Dkt 380).

    b.  Obtaining and reviewing over 3,000 pages of workpapers and financial records from Ira Dubin relating to Keystone's income, expenses, and tax filings.

    c.  Obtaining and reviewing over 5,000 pages of records from Great Lakes Bank regarding WACHN's loan agreements and Keystone's income and expenses, which records were denied to Plaintiff for a significant period of time due to the bank's sustained and erroneous insistence that its records retention policy had caused the records to no longer be in existence. The records were finally produced after Plaintiff directed counsel to their archiving system and loan document vault and agreed to pay for bank personnel time to search and retrieve records.

    d.  Obtaining and reviewing records from numerous additional third party subpoena respondents to attempt to verify the accuracy of the bucket report charges.

    e.  Taking the depositions of Dr. Hall in his various capacities in representing Keystone, Hall MDSC, Vertical Plus and WACHN, in addition to Ira Dubin,

and Michael Pakter, as well as defending the depositions of Dr. Angelopoulos and Jay Sanders. (*See* Dedinas Decl. ¶¶ 6-7).

Plaintiff's counsel also expended significant time and effort in tracking down, interviewing, and deposing fact witnesses who possessed knowledge relevant to Count 1. (Dedinas Decl. at ¶¶ 7-10). Bear Roalsen was one of those witnesses. Dr. Hall testified in one of his depositions that Bear Roalsen had left the Chicago area, that he did not know where Roalsen then resided, that he had not spoken to Roalsen in years, and that Roalsen's last-known whereabouts was somewhere in the state of California. Through diligent investigation, Plaintiff's counsel was able to locate Mr. Roalsen in the Nashville, Tennessee area. (Dedinas Decl. ¶7.) Counsel interviewed him by phone on several occasions in an effort to persuade him to cooperate with Plaintiff's investigation and eventually traveled twice to Nashville, once to interview him and another time to take his deposition. (*Id.*). Some of the Rule 404(b) witnesses, including Roalsen and George Cloud, were the subject of motions in limine.

Much of the expert report and testimony performed by Plaintiff's expert, Jay Sanders, was required to establish the factual predicates for his opinion on Count 1 and would have been necessary even if Count 1 had been the only cause of action. (Gair Decl. ¶ 19; Dedinas Decl. ¶ 7) Plaintiff also spent time and expense in responding to and seeking to bar the unfounded opinions on Count 1 of Defendants' expert, Michael Pakter. (Dedinas Decl. ¶ 7.)

In *Riordan*, the court awarded the plaintiff one-hundred percent of her legal fees and costs incurred in bringing the civil action in which she asserted a claim under Section 7434 even though she pled several state law claims in addition to the statutory claim. *Riordan*, 2017 WL 2225223, at *2; *see* Dkt No. 43 in *Riordan v. ASAP Counseling, LLC*, the United States District Court of the District of Kansas, Case No. 16-cv-2011).

Here, unlike in *Riordan*, Dr. Angelopoulos is not seeking one-hundred percent of his attorneys' fees in connection with this action, or anything close to that. Dr. Angelopoulos is only seeking fees for the attorney, accountant and expert work that fairly pertained to proving Count 1 and that would have been necessary even if Count 1 had been the only count. However, the work on Count 1 was inextricably intertwined with the work on the fraud and breach of fiduciary duty counts, and it was neither practical nor even possible to separately account for time devoted to Count 1. (Dedinas Decl. ¶ 12; Gair Decl. ¶ 16.) Thus, Plaintiff has estimated what the percentage of effort employed before and during trial would have been had Count 1 been the only cause of action. Accordingly, Plaintiff estimates that 25% of the total work represents a conservative estimate of the effort attributable to Count 1. As set forth in the attached declarations, 25% of the total attorneys' fees and costs expended in this litigation between Jenner & Block, Plaintiff's former counsel, and Gair Eberhard Nelson Dedinas, Ltd., Plaintiff's current counsel, are $227,016.52. And 25% of the expert work of Jay Sanders is $16,130.35. (*See* Dedinas Decl. ¶¶ 12-16; Gair Decl. ¶¶ 10-26.) To avoid double-counting, the court should deduct 25% of the $25,175 in fees already awarded as discovery sanctions (Dkt 380) – or $6,293.75.

Thus, the total appropriate damages award on Count 1 is:

| | |
|---|---|
| 100% of Tax Court Legal Fees | $ 49,758.75 |
| 100% of Accounting Fees related to 1099, Audit, and Tax Court Proceedings | $ 40,875.00 |
| 25% of Jenner & Block Litigation Fees | $ 35,859.57 |
| 25% of Gair Litigation Fees and Costs | $ 191,156.96 |
| Less 25% of sanctions awarded | ($ 6,293.75) |
| 25% of PBC Advisors Expert Witness Fees | $ 16,130.35 |
| **Total** | **$ 327,486.88** |

Dr. Angelopoulos respectfully submits that these costs and fees are reasonable and further the purpose of the statute, which is to protect a taxpayer from the "significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns" and to compensate him for the costliness of "straighten[ing] out the mess" caused by the fraudulent filing. H.R. Rep. No. 14-506, at 35 (1996); *Bailey,* 1998 WL 185520 at *2. Given the extent of Defendants' fraud and the "mess" created by their filing of the fraudulent 1099-MISC here, it is hard to think of a case more deserving of such an award.

II.     Plaintiff is Entitled to an Award of Prejudgment Interest on the Remaining Counts.

   A.   An Award of Prejudgment Interest is a Required Component of Damages Under the Illinois Interest Act and an Appropriate Component of Damages Under Principles of Equity.

Courts award prejudgment interest in recognition of the fact that "[i]n our society, the use of money is worth money." *Milligan v. Gorman*, 348 Ill. App. 3d 411, 416 (1st Dist. 2004). By an award of prejudgment interest, "the injured party is thus compensated for any economic loss occasioned by the inability to use his money." *In re Estate of Wernick*, 127 Ill. 2d 61, 87 (1989). "In cases involving a breach of fiduciary duty, the rationale behind an award of interest is to make the injured party whole by forcing the fiduciary to account for profits gained from his use of the injured party's funds." *Tully v. McLean*, 409 Ill. App. 3d 659, 685 (1st Dist. 2011).

Under Illinois law, an award of prejudgment interest is required when the case fits within section 2 of the Interest Act, 815 ILCS 205/2. *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 96. That section provides:

> Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; *on money received to the use of another and retained without the owner's*

> *knowledge; and on money withheld by an unreasonable and vexatious delay of payment.*

815 ILCS 205/2 (emphasis added).

Even where a claim does not fall within the precise terms of the Interest Act, a court has equitable power to award interest to compensate an injured party for the lost use of money. *Wernick*, 127 Ill. 2d at 75; *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶82.

B. Dr. Angelopoulos is Entitled to an Award Under the Interest Act.

Dr. Angelopoulos is entitled to an award of prejudgment interest under the Illinois Interest Act. Each of the categories of damages awarded by the jury to Dr. Angelopoulos are both "money received to the use of another and retained without the owner's knowledge" and "money withheld by an unreasonable and vexatious delay of payment," and therefore require payment of prejudgment interest. 815 ILCS 205/2. Statutory interest applies regardless of whether the interest is awarded under a cause of action for fraud, *Sheth*, 2013 IL App (1st) at ¶ 96, breach of fiduciary duty, *Brulin & Co., Inc. v. Higgins*, 1987 WL 10304, at *4 (N.D. Ill. Apr. 30, 1987), or breach of an oral contract. *Emmenegger Const. Co., Inc. v. King*, 103 Ill. App. 3d 423 (5th Dist. 1982).

Money is "received to the use of another and retained without the owner's knowledge" either where funds are obtained through a fraudulent misrepresentation, *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 98, or retained when they should rightfully be surrendered to another. *Marcus & Millichap Real Estate Inv. Services Inc. v. Sekulovski*, 2010 WL 145785, at *6 -7 (N.D. Ill. Jan. 12, 2010).

In order to constitute an "unreasonable and vexatious delay of payment," a defendant's conduct must be "tantamount to fraud," or another manifestation of a bad faith effort to avoid payment. *U.S. for Use & Benefit of Treat Bros. Co. v. Fid. & Deposit Co. of Maryland*, 986 F.2d

1110, 1121 (7th Cir. 1993) (defendant knew that it had not paid amounts owed to the Plaintiff, but filed a frivolous counterclaim based on a supposed debt owed to it by the Plaintiff); *612 N. Michigan Ave. Bldg. Corp. v. Factsystem, Inc.*, 54 Ill. App. 3d 749, 755 (1st Dist. 1977) (holdover tenant wrongfully occupied property).

The damages proved by Dr. Angelopoulos fall into five categories: (1) expenses overcharged to Dr. Angelopoulos by virtue of fraud and breach of fiduciary duty, resulting in wrongfully withheld income; (2) clawbacks of previously credited shared income relating to physical therapy and MRIs that resulted in wrongfully withheld income; (3) the direct failure, amounting to fraud and breach of fiduciary duty, to credit Dr. Angelopoulos with income in Q2 and Q3 2007 and collections on his billings through 2008; (4) WACHN expenses improperly overbilled to Dr. Angelopoulos through Keystone; and (5) withholding, by means of fraud and breach of fiduciary duty, the value of Plaintiff's interest in WACHN after he dissociated. The first four categories of misconduct all resulted in Keystone and WACHN wrongfully and fraudulently retaining more of Dr. Angelopoulos' patient billings than those to which they were entitled. The jury found that this conduct was a fraud by Keystone and Dr. Hall, and a breach of fiduciary duty by Dr. Hall. The fifth category, which the jury also found to be a breach of fiduciary by Dr. Hall, resulted in WACHN and Hall retaining more of Dr. Angelopoulos' funds than those to which they were entitled after Dr. Angelopoulos dissociated from WACHN.

The damages awarded to Dr. Angelopoulos were "money received to the use of another and retained without the owner's knowledge." As to Keystone, Dr. Hall's own characterization of the agreement with Dr. Angelopoulos was: "split expenses, keep what you make," an admission that money received by Keystone for Dr. Angelopoulos' patients belonged to Dr. Angelopoulos, and was subject only to paying a reasonable share of expenses to Keystone. In fact, Keystone and

Hall retained a much larger share of Dr. Angelopoulos' collections than those to which they were entitled, and fraudulently concealed and misrepresented the amounts Dr. Angelopoulos should have received. Like in *Sheth* and *Marcus & Millichap,* these amounts were clearly money received by Keystone for Dr. Angelopoulos but wrongfully retained and used by Keystone and Dr. Hall for many years. The same is true of Dr. Angelopoulos' contributions and other payments to WACHN after he dissociated.

These sums awarded to Dr. Angelopoulos were also "withheld by an unreasonable and vexatious delay of payment." Beyond simply retaining his money, Hall and Keystone hindered Dr. Angelopoulos' collection of that money by providing him with accountings containing false and inflated expenses, misrepresenting what he owed and not accurately reporting the amounts actually collected by Keystone for Dr. Angelopoulos. Worse yet, Dr. Hall and Keystone not only delayed payment, but created documents (like JX 54 and the phony 1099) whose only purpose was to create false justifications for the amounts withheld, to create tax problems for Dr. Angelopoulos, and ultimately to support an utterly unfounded counterclaim for over $500,000. Dr. Hall's vexatious conduct is further demonstrated by his repeated lies, evasions and self-contradictory statements under oath in his depositions and at trial. The vexatious nature of the conduct was perhaps best illustrated by the fact that on the witness stand Dr. Hall repeatedly asserted that the amounts recorded in the bucket reports as negatives to Dr. Angelopoulos's account were only accounting entries and that upon his departure Dr. Angelopoulos would not owe Hall or Keystone anything. There is no way to reconcile that sworn testimony with Hall's counterclaim against Dr. Angelopoulos apart from the explanation that the documents and the counterclaim were fraudulent.

The jury found that these actions were not only *tantamount* to fraud, they were *in fact fraudulent.* By its very nature, Hall's fraud unreasonably delayed and hindered Dr. Angelopoulos from collecting the proper amount of his earned income from 2004 until today.

Likewise, with respect to Dr. Angelopoulos' WACHN interest, Hall and WACHN unreasonably and vexatiously delayed paying the amount to which Dr. Angelopoulos was entitled after dissociation. This money was clearly due a reasonable time after dissociation, and Hall and WACHN failed to pay it, and instead fraudulently asserted that Dr. Angelopoulos owed him money related to WACHN and created documents, including JX 54, which purported to justify his position.

As part of this unreasonable and vexatious delay, by filing a false form 1099, Hall caused Dr. Angelopoulos to undergo a protracted and costly audit as well as tax court proceedings. All of that needless litigation further served to hinder and delay Dr. Angelopoulos' recovery of amounts due to him.

Finally, in order to award interest under the Act[1], the amount on which interest is to be paid must be easily ascertainable. That is plainly the case here. A good faith dispute over items of liability does not preclude damages being ascertainable. *Ash v. Georgia-Pac. Corp.*, 957 F.2d 432, 439 (7th Cir. 1992) (reversing trial court's denial of interest, finding that damages were ascertainable despite being "hotly contested and right up to the jury's verdict it was unclear what plaintiff's loss had been.")  Interest can be awarded under the Act "even when the amount payable may be uncertain until legally resolved."  *Gen. Dynamics Corp. v. Zion State Bank &*

---

[1] Under equitable principles, however, a court "is not precluded from awarding prejudgment interest merely because the damages are not subject to exact computation." *Neumann v. Neumann*, 334 Ill. App. 3d 305, 311, 777 N.E.2d 981, 985 (3d Dist. 2002).

*Trust Co.*, 86 Ill. 2d 135, 140 (1981); *U.S. for Use & Benefit of Treat Bros. Co. v. Fid. & Deposit Co. of Maryland*, 986 F.2d 1110, 1121 (7th Cir. 1993).

Dr. Angelopoulos' damages in this case are ascertainable, and were in fact specifically ascertained and calculated as specific items of overcharge and withheld income. In the end, it appears that the jury did not simply accept all of Plaintiff's items of damage but exercised its duty to independently ascertain damages. This simply means that, like the damages sought in *Ash*, the damages here were hotly contested, and required the jury to resolve a dispute over the Defendants' liability. Dr. Angelopoulos was awarded compensatory damages for concrete ascertainable items of economic loss caused by Defendants' fraud, breaches of contract, and breaches of fiduciary duty.

C.   <u>In Any Event, Dr. Angelopoulos is Entitled to an Equitable Award of Interest.</u>

Even if an award of interest were not mandated by the Illinois Interest Act, this court has the equitable power under Illinois law to award interest to compensate the Plaintiff for the lost use of wrongfully withheld income and should do so here.

The court may make an equitable award of prejudgment interest arising out of fraud or breach of fiduciary duty. Courts in this circuit, and the Illinois state courts, routinely make equitable awards of prejudgment interest under both of these causes of action when they find that that a defendant deprived a plaintiff of the use of money. *In re Estate of Wernick*, 127 Ill. 2d 61, 87 (1989) (breach of fiduciary duty); *Michaels v. Michaels*, 767 F.2d 1185, 1204 (7th Cir. 1985) (fraud); *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 122725, ¶¶ 86, 91 (fraud); *Tully v. McLean*, 409 Ill. App. 3d 659, 685, 948 N.E.2d 714, 741 (1st Dist. 2011) (breach of fiduciary duty by LLC manager); *Prignano v. Prignano*, 405 Ill. App. 3d 801, 822 (2d Dist. 2010) (breach of fiduciary duty); *Neumann v. Neumann*, 334 Ill. App. 3d 305 (3d Dist. 2002) (breach of fiduciary duty); *NC Illinois Trust Co. v. First Illini Bancorp, Inc.*, 323 Ill. App. 3d 254,

266 (3d Dist. 2001) (breach of fiduciary duty); *Obermaier v. Obermaier*, 128 Ill. App. 3d 602, 604 (1st Dist. 1984) (fraud and breach of fiduciary duty in stock sale).

Courts likewise award prejudgment interest under a variety of other theories when the lost time-value of money is implicated. *RRK Holding Co. v. Sears, Roebuck & Co.*, 563 F. Supp. 2d 832, 839 (N.D. Ill. 2008) (trade secret misappropriation); *In re Joy Recovery Tech. Corp.*, 291 B.R. 111, 118 (Bankr. N.D. Ill. 2003) (fraudulent transfer); *Kerasotes v. Estate of Kerasotes*, 238 Ill. App. 3d 1020, 1030 (4th Dist. 1992) (equitable accounting between partners); *Chicago Title & Trust Co. v. First Arlington Nat. Bank*, 118 Ill. App. 3d 401, 412 (1st Dist. 1983) (constructive trust and unjust enrichment).

D. <u>Timing and calculation of interest</u>

Courts of equity have traditionally looked to the Interest Act to set a fair rate of interest, though they are not bound by it. *See In re Estate of Wernick*, 127 Ill. 2d 61, 87 (1989) (awarding interest in excess of statutory rate). Here, the Plaintiff suggests that 5% simple interest will fairly compensate him for the time-value of funds withheld from him.

Whether under the Interest Act, or under equitable principles, Dr. Angelopoulos should be compensated for the lost use of the compensatory damages awarded by the jury. Interest should be calculated beginning on January 1, 2008—the latest date upon which Dr. Angelopoulos should have been fully paid amounts due and owing after his dissociation from Keystone and WACHN.[2]

Dr. Angelopoulos respectfully requests an award of prejudgment interest from January 1, 2008 to July 1, 2017 in the amount of $431,486.58 on Count 3,[3] $215,743.29 on counts 2 and 6, and $52,747.81 on Count 5 as detailed below:

---

[2] As the evidence showed at trial, Dr. Weber was paid out his $111,000 in December 2007.
[3] Plaintiff requests an opportunity to update this calculation if judgment is entered after August 1, 2017.

| Count | Compensatory | Years | Rate | Interest |
|-------|-------------|-------|------|----------|
| Count 2 | $454,000 | 9.504 | 5% | $215,743.29 |
| Count 3 | $908,000 | 9.504 | 5% | $431,486.58 |
| Count 5 | $111,000 | 9.504 | 5% | $52,747.81 |
| Count 6 | $454,000 | 9.504 | 5% | $215,743.29 |

III.    Plaintiff Should Be Awarded Equitable Relief on Count 3 Requiring Dr. Hall and Keystone to Indemnify and Hold Dr. Angelopoulos Harmless for the WACHN Guaranty.

The evidence at trial demonstrated that as part of his fraud against Dr. Angelopoulos, Dr. Hall wrongfully prevented Great Lakes Bank from releasing Dr. Angelopoulos as a guarantor on the WACHN loans. The trial evidence showed that the three departing WACHN members sought a release of the guaranty, that the bank did an exhaustive credit analysis of the loan without those three guarantors, and that all necessary internal levels of approval were obtained. The guaranty was not released, however, based on the objection of one of the "parties," which the Court can fairly infer was Dr. Hall and Keystone. It appears that the jury assigned little or no money damages to Dr. Angelopoulos in relation to that guaranty.

In order to facilitate Dr. Angelopoulos' release from those loans, this court should exercise its equitable powers to order Dr. Hall and WACHN to indemnify Dr. Angelopoulos and hold him harmless for any amounts due under Dr. Angelopoulos' personal guaranty.

Alternatively, the court should order Dr. Hall, in his individual capacity, and on behalf of Keystone and WACHN to submit a formal written request that First Midwest Bank (as acquirer of Great Lakes Bank) release Dr. Angelopoulos from all his obligations under the personal guaranties.

IV.    The Judgment Should Be Allocated in Order to Avoid Double Recovery.

Based on the jury's verdict, the damages on Count 1, and the award of prejudgment interest, the total monetary award in this case should be as follows.

| Count: Defendant | Compensatory | Interest | Punitive | Total |
|---|---|---|---|---|
| Count 1: Keystone & Hall | $327,486.88 | | | $327,486.88 |
| Count 2: Keystone | $454,000.00 | $215,743.29 | | $669,743.29 |
| Count 2: Hall | $454,000.00 | $215,743.29 | $1,000,000 | $1,669,743.29 |
| Count 3: Hall | $908,000.00 | $431,486.58 | $1,000,000 | $2,339,486.58 |
| Count 5: WACHN | $111,000.00 | $52,747.81 | | $163,747.81 |
| Count 6: Keystone | $454,000.00 | $215,743.29 | | $669,743.29 |

Plaintiff appreciates, of course, that it is not entitled to a double recovery for the same injury. *Duran v. Town of Cicero, Illinois*, 653 F.3d 632, 639 (7th Cir. 2011); *Thornton v. Garcini*, 382 Ill. App. 3d 813, 820 (3d Dist. 2008). The issue potentially arises here for two reasons—the existence of multiple overlapping theories of recovery and the existence of multiple defendants. It is indisputably the defendants who have the burden of establishing the amount of the set-off to avoid a double recovery. *Thornton*, 382 Ill. App. 3d at 820. However, plaintiff submits that the following allocation is appropriate.

Based on the proof at trial, the closing arguments, the instructions and the jury's final question to the Court, there should be little doubt about how to allocate the recoveries for purposes of the judgment here. The plaintiff's theory and proof at trial, including the expert testimony, was that the damages against Hall and Keystone for fraud, breach of fiduciary duty and breach of the Keystone contract were identical and overlapping. The jury plainly recognized the overlap but obviously concluded that, in light of the burdens of proof, plaintiff had proved greater damages on the breach of fiduciary duty count than on the fraud count. The jury also awarded the identical amount of punitive damages against Hall on Counts 2 and 3, and given the overlap, it seems likely that the jury intended only one recovery of $1 million in punitives.

Count 1 was not presented to the jury and involves a completely distinct harm from those compensated on the other counts. The damages awarded by the jury were for money which Dr. Angelopoulos was entitled to but was never paid by virtue of the fraud and breach of fiduciary

duty, as well as breach of contract. Count 1, by contrast, involves an entirely different harm: the injury Dr. Angelopoulos suffered in defending against the phony information return and subsequently seeking to vindicate his statutory right to redress. The damages on Count 1 must therefore be aggregated with the damages on Count 1, and no set-off is appropriate. Taking the damages on Count 3 of $2,339,486.58 and adding the damages on Count 1 of $327,486.88, the maximum total recovery for the plaintiff from all defendants should be $2,666,973.46.

## Conclusion

Thus, Plaintiff submits that judgment should be entered as follows:

1. Judgment against defendant Hall on Counts 1, 2, and 3 in the total amount of $2,666,973.46, with that liability being joint as to defendants Keystone and WACHN to the extent described below.

2. Judgment against defendant Keystone on Counts 1, 2 and 6 in the total amount of $997,230.17, with that liability being joint with the liability of defendant Hall.

3. Judgment against defendant WACHN on Count 5 in the total amount of $163,747.81, with that liability being joint with the liability of defendant Hall.

4. The maximum total recovery of plaintiff against all defendants is $2,666,973.46.

Respectfully submitted,

*/s/ Chris Gair*
 Chris Gair
 One of Plaintiff's attorneys

Dated: June 27, 2017

Chris Gair (ARDC # 6190781)
Thomas R. Heisler (ARDC # 6296712)
Ryan P. Laurie (ARDC # 6318306)
Gair Eberhard Nelson Dedinas Ltd
1 East Wacker Drive, Suite 2600
Chicago, IL 60601
(312) 600-4900