# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DR. NICHOLAS ANGELOPOULOS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-5836 |
| | ) | |
| KEYSTONE ORTHOPEDIC SPECIALISTS, | ) | Judge Robert M. Dow, Jr. |
| S.C., WACHN, LLC, and MARTIN R. HALL, | ) | |
| M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are two closely related motions: (1) Plaintiff's motion for entry of judgment under Rule 58 [440] and (2) Defendants' motion for judgment on partial findings under Rule 52(c) on Count I or for alternative relief [450]. Both motions [440, 450] are denied without prejudice, although in this opinion the Court resolves many of the sub-issues relating to the request for damages and authorizes limited, targeted additional discovery to take place by March 16, 2018. The Court also defers certain matters, including the "double recovery" issues, until after a Rule 58 judgment is entered combining the jury verdict (as it now stands) and the Court's forthcoming damages award under Count 1. As explained below, the parties are directed to contact the Courtroom Deputy within two business days after they receive the last transcript of the depositions that are permitted pursuant to this opinion so that a prompt status hearing can be set. The Court will then discuss with counsel a plan for the final disposition of Count 1 and provide further guidance on the post-judgment issues that the parties have previewed in the briefing on the current motions. As a housekeeping matter, the Court also denies as moot Plaintiff's motion for directed verdict on Defendants' counterclaims [414] because Plaintiff

prevailed on those claims at trial; and denies Defendants' Rule 50(a) motion for partial summary judgment [423] without prejudice to Defendants raising the issues preserved in their Rule 50 motion in any Rule 59 motion that they may file.

## I.     Background

By way of background, Plaintiff Dr. Nicholas Angelopoulos brought suit against Defendants Keystone Orthopedic Specialists, S.C., WACHN LLC, and Dr. Martin R. Hall. The Court previously has set out in detail the parties' respective factual and legal contentions in its rulings on motions to dismiss and summary judgment [see 258, 303]. On June 6, 2017, a jury returned a verdict in favor of Plaintiff on Counts 1 (violation of 26 U.S.C. § 7434), 2 (fraud), 3 (breach of fiduciary duty), 5 (breach of WACHN operating agreement), and 6 (breach of Keystone agreement). By agreement of the parties, the issue of damages in the event of a verdict for Plaintiff on Count 1 was reserved for determination by the Court. Plaintiff now seeks a damages award on Count 1, as well as prejudgment interest on Counts 2, 3, 5, and 6 and equitable relief on Count 3—all of which Plaintiff would like incorporated into a Rule 58 final judgment order. Defendants oppose most of the relief sought by Plaintiff and have themselves moved for judgment on partial findings pursuant to Rule 52(c) on Count 1, as well as other relief sought in the alternative. The gap between Plaintiff's request for approximately $327,000 in fees and costs and Defendants' contention that the Court's award should be limited to the $5,000 statutory amount underscores the extent of the parties' disagreement on the proper disposition of what remains of Count 1. As explained below, the parties are at odds on almost every sub-issue, thus necessitating both a lengthy opinion at this time and further work by the parties and the Court going forward.

## II. Analysis

### A. Plaintiff's motion for Rule 58 judgment

In Count 1 of his complaint, Plaintiff sought recovery under 26 U.S.C. § 7434, alleging that Defendants Keystone and Hall caused a fraudulent IRS Form 1099 to be filed in Plaintiff's name reporting more than $159,000 as taxable income for tax year 2007. Plaintiff acknowledged that approximately $38,000 should have been reported on the 1099, but claimed that the excess amount was included by Keystone and Hall out of spite arising out of the larger disputes between the parties. The jury agreed with Plaintiff as to liability. By agreement of the parties, the calculation of damages will be done by the Court.

Section 7434(b) governs "damages" for the filing of a "fraudulent information return." It permits the Court to award either (1) a flat sum of $5,000 or (2) the sum of (a) "any actual damages sustained by the plaintiff as a proximate cause of the filing of the fraudulent return (including any costs attributable to resolving deficiencies asserted as a result of such filing)," (b) the "costs" of the civil action, and (c) "in the court's discretion, reasonable attorneys' fees." Defendants insist that a minimal $5,000 award is sufficient compensation; Plaintiff seeks an award of more than $325,000, which includes all of the attorneys' fees and accounting expert expenses that he incurred in the underlying tax court proceedings as well as roughly 25% of certain categories of attorneys' fees and expert expenses in this litigation—amounts that Plaintiff submits "fairly pertained to proving Count 1 and that would have been necessary even if Count 1 had been the only count." [440, at 12.]

Although the case law construing Section 7434(b) is rather sparse, a few sensible governing principles emerge to guide the Court's analysis here. To begin with, a taxpayer tagged with a fraudulent tax from an inflated 1099 may "have to initiate costly proceedings to

straighten out the mess." *Bailey v. Shell W. E&P, Inc.*, 1998 WL 185520, at *2 (N.D. Tex. Apr. 14, 1998). When the taxpayer convinces a trier of fact of "the unlawfulness of [the wrongdoer's] willfully fraudulent filing of the 1099," "it would be a major injustice for [the taxpayer] to be compelled to bear, unrecompensed, the amounts expended" to demonstrate the fraud. *Shiner v. Turnoy*, 2014 WL 3907043, at *2 (N.D. Ill. Aug. 11, 2014), *rev'd on other grounds*, 850 F.3d 923 (7th Cir. 2017). And because distinguishing between a proper 1099 filing and a fraudulent one may require lay taxpayers to employ both legal and accounting assistance, attorneys' fees *and* expert witness fees properly lie within the scope of expenses reimbursable to a wronged taxpayer. Cf. *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.,* 63 F.3d 516, 526 (7th Cir. 1995) (in RICO suit, awarding expert witness fees to prevailing plaintiff as part of "cost of the suit"); *Bright v. Land O'Lakes, Inc*., 844 F.2d 436, 444–45 (7th Cir. 1988) (awarding accountants' fees to prevailing plaintiff under the Wisconsin Fair Dealership Law as "part of the shifted attorney's fees"); *Heiar v. Crawford Cty., Wis*., 746 F.2d 1190, 1203 (7th Cir. 1984) (holding that under the Age Discrimination in Employment Act, "expenses for such things as postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses … are part of the reasonable attorney's fee" allowed to prevailing plaintiffs).

To those principles, the Court adds two more. First, given the important private and public interests served by dealing honestly with the government in regard to taxes—both on the part of the taxpayer and any employers reporting taxpayer income—a court should not second-guess the taxpayer's decision to retain professional assistance to sort out any alleged deficiencies associated with his return. Put slightly differently, when faced with an accusation of shorting the government, the issues at stake go beyond a straightforward cost-benefit analysis and it would not be irrational for a taxpayer like Plaintiff here to spend more money on lawyers and

4

accountants to clear his name than he likely would be to recover in the form or a refund or reassessment of his tax liability.  Second, with that said, any court asked to make a discretionary award of attorneys' fees and other litigation costs must have some standard to apply and cannot simply rubber stamp the bills submitted by the prevailing party in a Section 7434 action.  Drawing on the analogous context of attorneys' fees awards in civil rights actions, the Court will use "reasonableness" as its touchstone in considering Plaintiff's request here. See *Farrar v. Hobby*, 506 U.S. 103, 114–15 (1992) (explaining that "the court's 'central' responsibility" in awarding attorneys' fees in a § 1983 case is "to 'make the assessment of what is a reasonable fee under the circumstances of the case" (quoting *Blanchard v. Bergeron,* 489 U.S. 87, 96 (1989))); *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) ("the district court is in the best position to make the 'contextual and fact-specific' assessment of what fees are reasonable" (quoting *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010)); *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998) (explaining that "the touchstone" for awarding attorneys' fees in a § 1983 case "is not whether a particular argument was successful, but rather whether it was reasonable").  As the foregoing analysis suggests, while it will be Plaintiff's task to demonstrate the reasonableness of his damages under Section 7434, he will not be faulted for taking a cautious approach to his tax liabilities by hiring reputable (and expensive) lawyers and accountants, nor will their decisions to thoroughly explore the problem and potential solutions be second-guessed with the benefit of hindsight.

### B.     Defendants' motion for partial findings under Rule 52(c)

How the Count 1 damages inquiry is to proceed is the subject of Defendants' Rule 52(c) motion and the parties' briefs for and against it.  The Court does not find either side's proposal entirely satisfactory.  Plaintiff's suggestion to take the somewhat cursory records submitted with

the briefs and proceed to trial without any additional discovery on damages is not persuasive for several reasons. To begin with, although there was extensive fact discovery in this case, it did not include a close analysis of the legal and expert bills from the IRS proceeding and the litigation in this Court. Indeed, it would have been wasteful to have taken such discovery, as it would have been irrelevant to the case had the jury not resolved Count 1 in Plaintiff's favor. Yet Plaintiff's suggestion to streamline the damages phase on Count 1 by simply giving defense counsel an opportunity to examine current Plaintiff's counsel at a hearing also misses the mark, for it overlooks the existence of claims for reimbursement for work done by lawyers and experts in the tax court proceeding who have had no role whatsoever in the proceedings before this Court. That fact makes this situation different than a typical fee petition presented under Local Rule 54.3 and justifies some discovery. The Court knows almost nothing about the underlying tax court proceedings, nor can it judge the reasonableness of the fees expended there without some explanation and justification.

But Defendants' contention that Plaintiff has waived any opportunity to develop arguments for bench trial on Count 1 damages is equally unavailing. True, the Court requested that the parties meet and confer on a process for presenting the damages issue arising out of the jury's liability determination and Plaintiff's unilateral proposal has been found wanting for the reasons set out above. Nevertheless, (1) the jury determined that Plaintiff was wronged by Defendants' actions, (2) Plaintiff is entitled to fair recompense, and (3) the Court needs additional information to make a discretionary damages award in a reasoned manner.

Accordingly, consistent with the 2015 amendments to Rule 1 and Rule 37, the Court will allow limited and proportional discovery on Plaintiff's Count 1 damages claim. Most, if not all, of the potential witnesses are sophisticated lawyers and accountants who should be able to

review their files quickly and should not need extensive preparation to answer questions about the work they performed, either in the tax court proceeding or in this case. Because of this, depositions will be superior to written questions with follow-up; there is no reason that the depositions cannot explore the disputed issues with great efficiency. Plaintiff complains about the imposition on lawyers and accountants who have not appeared in this case, but because he bears the burden of showing the reasonableness of the fees that he claims as damages, the Court will not be in position to consider a claim for fees for the services of a lawyer or accountant who refuses to sit for a short deposition. Similarly, the extent to which any issues of privileged communications relating to Plaintiff's own tax case may arise, the privilege belongs to Plaintiff and he can choose either to waive it or stand on it. Should Plaintiff choose to assert the privilege and thereby shield evidence or testimony that bears on the Court's reasonableness inquiry, that choice may adversely affect his ability to recover discretionary fees and costs. See *generally Estate of Borst v. O'Brien*, 979 F.2d 511, 515 (7th Cir. 1992) ("The burden is on the party seeking the award [of attorneys' fees] to substantiate the hours worked and the rate claimed."); *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp. 3d 1000, 1019 (N.D. Ill. 2016) (explaining that the party seeking award of attorneys' fees "bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed").

The parties should focus on justifying the reasonableness of the substantive work for which the individuals billed their time and the results achieved. In regard to the parties' specific debate over the scope of discovery from the tax lawyers and accountants [see 454, at 15; 460, at 12-13], Defendants may inquire generally about how the attorneys and accountants have handled cases similar to Plaintiff's in the tax court—*i.e.,* customary fees, approximate number of hours, general manner of proceeding in tax court—but may not request production of any documents

7

from other cases without approval of the Court after the deposition. As Defendants note, none of the lawyers currently in this case has any experience in the tax courts, nor does the judge. Therefore, additional information on the reasonableness of the fees and costs incurred in the tax proceeding is critical to the Court's ability to assess Plaintiff's claim to reimbursement of those fees and costs, which amounts to more than $90,000.

To be sure, in addition to that $90,000, Plaintiff asks for more than $235,000 in fees and costs associated with the litigation in this Court, and thus the depositions also may include the lawyers in this case to provide additional insight into the extent to which Count 1 was a "central issue in the case" (as Plaintiff contends, pointing to the number of times that Defendants argued unsuccessfully for its dismissal) or a more peripheral one (as Defendants contend, pointing to the fact that Plaintiff's expert devoted only 2 pages of his 49 page report to the issue, yet Plaintiff seeks reimbursement under Section 7434 for 25% of the cost of the report). The depositions should streamline the Count 1 bench trial considerably, and counsel are directed to try to reach accord in regard to which issues can be presented on the papers (briefs, transcripts, billing records), saving for in-court testimony only those matters that relate to the credibility of witnesses.

Given (1) the contentiousness of this case in general, (2) the difficulty that the parties have had in seeing eye-to-eye on how to resolve the specific damages issue in Count 1, (3) the Seventh Circuit's encouragement to avoid costly satellite litigation on attorneys' fees and costs, and (4) the Rule 1 principles calling for the Court to play an active case management role to ensure the "just, speedy, and inexpensive" resolution of disputes, the Court will set specific ground rules for the additional discovery that is permitted on this matter. Defendants will be permitted no more than 12 hours total for all depositions that they wish to take. No single

deposition shall last more than 3 hours. The parties must work together with the goal of completing the depositions no later than March 16, 2018. The parties must contact the Courtroom Deputy within 2 business days of receipt of the final deposition transcript to set a status hearing to discuss the next steps toward the resolution of Count 1 (*i.e.*, whether there is any need for in-court testimony, a schedule for further briefing, the possibility of oral argument).

### C. Prejudgment interest on state law claims

On top of a damages award under Section 7434, Plaintiff requests pre-judgment interest on the jury awards as to the remaining counts. He asserts an entitlement to pre-judgment interest under the Illinois Interest Act or, alternatively, as an equitable matter. Given that the claims for which damages were awarded (and interest is sought) arose under state law, the Court looks to Illinois statutes and common law to determine whether interest should be awarded as well.

Under the Illinois Interest Act, "[i]n order to recover prejudgment interest, the amount due must be liquidated or subject to an easy determination." *Santa's Best Craft, LLC v. Zurich Am. Ins. Co.*, 941 N.E.2d 291, 307 (Ill. App. 2010); see also *West Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 794 F.3d 666, 680 (7th Cir. 2015); *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 631 (7th Cir. 2009). Here, the inability of either side (or the Court) to directly trace the jury's damages award either to Plaintiff's "ask" or to any of the numbers introduced at trial undermines any suggestion that the "amount due" to Plaintiff on account of Defendant's unlawful conduct was "liquidated or subject to an easy determination." Therefore, the Illinois Interest Act does not apply. Nevertheless, equity and common sense support the propositions that the time value of money is significant and to forego prejudgment interest in circumstances like this would reward a wrongdoer and, at a minimum, provide a strong incentive for a defendant to seek delay in the resolution of a civil action. See *In re Estate*

*of Wernick*, 127 Ill. 2d 61, 87 (1989) (affirming equitable award of prejudgment interest in breach of fiduciary duty case and explaining that "[f]undamental principles of damages and compensation dictate that when money has been wrongfully withheld the victim receive interest for the wrongdoer's retention of his money"). At the same time, it important to bear in mind that "[t]he goal of proceedings sounding in equity is to make the injured party whole," *id*. at 86-87, not to give the victim a windfall. As *Wernick* illustrates, the fluctuation of rates over time supports the application of a floating, rather than a fixed, percentage for interest awarded in equity.[1] As the Court has done in other recent cases involving prejudgment interest,[2] it will use a market rate—specifically, the average prime rate over the relevant time period—to "fully compensate[]" Plaintiff without providing him a windfall. *Cement Div., Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1114-15 (7th Cir. 1998); see *also, e.g.*, *Matter of P.A. Bergner & Co.*, 140 F.3d 1111, 1123 (7th Cir. 1998) ("prejudgment interest should not be thought of as a windfall … ; it is simply an ingredient of full compensation that corrects judgments for the time value of money); *Sheth v. SAB Tool Supply Co*., 990 N.E.2d 738, 760, 371 (Ill. App. 2013) ("The purpose of an award of prejudgment interest is to fully compensate the injured party for the monetary loss suffered."); cf. *Wernick*, 127 Ill. 2d at 88-89 (approving interest at prime rate to make aggrieved party whole). And because the weight of authority establishes that compound interest is disfavored under Illinois law, simple interest will be awarded. *Reaver v. Rubloff-Sterling, L.P.*, 708 N.E.2d 559, 562 (Ill. App. 1999); *Harrington v. Kay*, 483 N.E.2d 560, 567 (Ill. App. 1985); cf. *Halloran v. Dickerson*, 679 N.E.2d 774, 779 (Ill.

---

[1] The 5% rate under the Illinois Interest Act would have undercompensated an aggrieved Plaintiff in the late 1970s and early 1980s, but it would overcompensate Plaintiff here, who was deprived of his money during a time of historically low interest rates.

[2] See *Arroyo v. Volvo Group North America, LLC*, 2017 WL 2985649, at *10 (N.D. Ill. July 13, 2017); *Smith v. Farmstand*, 2016 WL 5912886, at *23 (N.D. Ill. Oct. 11, 2016).

App. 1997) ("It is well-established in Illinois that this accrual of interest is simple interest and not compound interest.").

Finally (for present purposes), the parties debate the timing of any interest award: should the calculation of interest begin from the date on which Plaintiff's claims accrued, the date on which he first made a demand on Defendants, or some other date (for example, the date on which he filed his complaint)? As a court proceeding in equity, the Court concludes that the date on which Plaintiff first made a formal demand on Defendants—that is, November 8, 2011—is the appropriate date from which to trigger an award of prejudgment interest. Using the date of first demand provides an incentive for a plaintiff to seek prompt redress of any dispute rather than allowing the dispute to fester, while at the same time encouraging aggrieved parties to explore out-of-court dispositions prior to commencing litigation. (Again, see Rule 1.). As noted above, the failure to award any interest at all would provide an incentive for a defendant to seek delay on the back end of a dispute. At the same time, however, equity should encourage a plaintiff not to dither on the front end. The reasons why Plaintiff did not send a demand letter to Defendants until late 2011 or file suit prior to mid-2012 remain unclear. But as well educated and highly compensated professional, Plaintiff possessed the tools to have brought the issues litigated in this case to a head at any time after they occurred and therefore he will have to be content with an award of interest from the time he did so, not from the time at which he could have done so.

### D. Equitable relief on Count 3

Plaintiff's request for equitable relief as to Count 3 can be addressed in short order. Plaintiff cites no authority in support of his request. Nor was the evidence adduced at trial very persuasive on the need for relief—legal or equitable—as to harm to Plaintiff on account of the

11

WACHN guaranty.[3] Neither Plaintiff's lay nor his expert testimony established any current harm or likelihood of impending harm from the WACHN guaranty. For example, there was no testimony that Plaintiff had any difficulty obtaining credit or paid a higher rate of interest to obtain credit on account of the WACHN guaranty. Nor was there any testimony suggesting that there ever has been or ever will be a reason for the bank that extended the credit to WACHN to act on the guaranty and thus cause any harm to Plaintiff. Rather, the testimony at trial showed that WACHN has made all of its payments in a timely fashion, both during the time that Plaintiff was associated with Defendants and at all times since his disassociation. Moreover, should that situation change in the future, Plaintiff likely will have a claim for money damages.

### E.     Double recovery issues

Finally, the parties agree that the jury verdict presents a "double recovery" issue. However, they disagree vigorously on how to resolve that issue. The Court does not have either full transcripts or full arguments of counsel on the issue. Accordingly, in the interest of efficiency and conservation of the parties' and the Court's resources, the Court will defer the "double recovery" issue until the post-judgment phase of the case. It will enter a final judgment that combines the jury's verdict with the Court's ruling on Count 1 damages. In addition, given that both sides have provided a preview of some of their post-judgment arguments and responses in the current briefing, at the next status hearing the Court will provide further guidance to counsel in regard to its preliminary reactions to the post-verdict issues on Counts 2-6 in an effort to bring all of the proceedings in the trial court to an end as early in 2018 as possible.

---

[3] Plaintiff himself notes [440, at 20] that "[i]t appears that the jury assigned little or no damages to Dr. Angelopoulos in relation to that guaranty." However, any questions relating to the jury verdict on Count 3 must be deferred to the post-judgment phase, which will commence once the Court resolves the damages award under Count 1 and enters a Rule 58 judgment.

Date: January 18, 2018

_____
Robert M. Dow, Jr.
United States District Judge